**CHAMBERSBURG HOSPITAL,**
Petitioner

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 23, 2011.

Decided Jan. 6, 2012.

Publication Ordered May 8, 2012.

Daniel M. Lieberman, Lancaster, for petitioner.

Maribeth Wilt–Seibert, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and BUTLER, Judge.[1]

OPINION BY Judge LEAVITT.

Chambersburg Hospital (Employer) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) granting Jacqueline K. Seville's (Claimant) claim for benefits under the Unemployment Compensation Law (Law).[2] In doing so, the Board affirmed the decision of the Referee that Claimant was not ineligible for benefits under Section 402(e) of the Law, 43 P.S. § 802(e),[3] for violating Employer's sick leave policy because the policy was unreasonable. Concluding that the Board erred in finding Employer's sick leave policy to be unreasonable, we will reverse and remand.

Claimant was employed by Employer as a dietary assistant and catering associate until she was discharged on August 17, 2010. The stated reason for Claimant's discharge was "fraudulent use of sick time." Reproduced Record at 45a (R.R. ——). Claimant applied for unemployment benefits, which the UC Service Center granted. Employer appealed and a hearing was held by the Referee.

At the hearing, Employer established that, under its attendance policy, an employee who is ill or otherwise unable to report to work as scheduled must person-

---

1. This case was decided before Judge Butler's term ended on January 2, 2012.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751–914.

3. Section 402(e) of the Law provides, in relevant part, that "[a]n employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e).

ally notify his or her department manager or supervisor prior to the beginning of the employee's shift. The policy further provides:

> If an employee starts to feel better after calling off their scheduled shift it is their responsibility to call back in to the appropriate authority to see if coverage was arranged or if they should report to work for the rest of their shift. Employees are provided sick leave pay to lessen the financial burden experienced when they are unable to work due to illness or accidents. *It is the hospital's expectation that the employee be at home resting quietly when calling in ill.* Random calls can/will be made to the employee to verify they are resting at home (*Callison vs. City of Philadelphia,* No. 04–2941 [430 F.3d 117] (3rd Cir.) ).[4] ] Being out and about *conducting or attending to personal business,* attending or participating in sports activities, shopping (other than for medication), working another job, *yard work or home chores, running errands,* participating in or attending social events and attending or participating in recreational activities after calling off ill *will be considered accepting sick leave pay fraudulently* and shall be cause for discharge as outlined in the collective bargaining agreement Article 9, Section 9.2(c).[5]

R.R. 69a (emphasis added). It is undisputed that Claimant was aware of these particulars of Employer's sick leave policy.

Notably, Article 9, Section 9.2(c) of the collective bargaining agreement states:

> Sick leave shall be granted only for bona fide incapacity and emergency visits to the doctor or dentist. Any fraud on the part of an employee in accepting sick leave pay under other circumstances shall be cause for discharge or other discipline.

R.R. 70a.

Claimant's supervisor, Patricia England, testified that Claimant was scheduled to work 6:30 a.m. to 3:00 p.m. on Thursday, August 5, 2010, and Friday, August 6, 2010. Claimant called in prior to her shift on both days and informed the shift manager that she would not be at work "due to the fact that she was ill, citing stomach problems." Notes of Testimony, December 16, 2010, at 8 (N.T. ——); R.R. 13a.

Julie Conti, a private investigator, testified that Employer hired her to conduct surveillance at Claimant's home on August 6, 2010. Conti observed Claimant from approximately 12:30 p.m. to 3:00 p.m. doing "yard work [and] home chores" such as picking up and carrying items in her yard and pulling weeds. N.T. 10; R.R. 15a. At approximately 6:40 p.m., Conti followed Claimant and several other individuals to a drive-in movie theatre, where Claimant watched a movie while sitting in a lawn chair. Conti's testimony was supported by a DVD recording of her surveillance that was offered into evidence.

---

**4.** In *Callison v. City of Philadelphia,* 430 F.3d 117 (3d Cir.2005), the Court of Appeals for the Third Circuit held that an employer's policy requiring employees on sick leave to notify employer when leaving their home during regular working hours did not conflict with any substantive provisions of the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2654, nor did it prevent or discourage employees from taking FMLA leave. The Court of Appeals noted that "[t]he purpose of

the procedure is to provide an additional safeguard against sick leave abuse by employees." *Callison,* 430 F.3d at 121.

**5.** "Sick leave" is defined in the collective bargaining agreement as "an absence of an employee from work by reason of illness or accident which is non-work connected and not compensable under the Workers' Compensation Laws of Pennsylvania." R.R. 70a.

Employer interviewed Claimant on August 17, 2010, about her absence from work on August 5 and 6. Claimant recalled that she went to Wal–Mart for medicine on August 5 and stayed home all day on August 6. After evaluating the results of Conti's investigation, Employer determined that Claimant had fraudulently used sick leave and terminated her employment.

Claimant testified that she has a history of depression, anxiety, insomnia and acid reflux. She called in sick on August 5 and 6 because she was experiencing acid reflux. Claimant did not dispute that she spent time outside in her yard on August 6. She contended, however, that her doctor had advised her in the past to spend time outside doing yard work in order to combat her depression and anxiety.

The Referee held that Employer's sick leave policy was not reasonable. The Referee explained that it is unreasonable for Employer to expect its employees, particularly those who suffer from depression and anxiety, to stay inside their home and refrain from engaging in outdoor activities that may enhance their well-being and make them feel better. Referee's Decision/Order at 2–3. The Referee noted that Claimant did not go on vacation or go swimming or engage in other strenuous types of activities. *Id.* at 3. The Referee acknowledged that Claimant may have exercised poor judgment by leaving her home to watch a movie, but concluded that her actions did not rise to the level of sick leave fraud. Accordingly, the Referee held that Claimant was not ineligible for benefits under Section 402(e) of the Law,

43 P.S. § 802(e). Employer appealed to the Board, which affirmed on the basis of the Referee's factual findings and conclusions of law. Employer now petitions for this Court's review.

 On appeal,[6] Employer argues that the Board erred in holding that its sick leave policy is unreasonable. Employer also contends that the Board erred in implicitly finding that Claimant had good cause to violate the sick leave policy because her underlying depression necessitated spending time outdoors.[7] Employer asserts that there was no evidence, medical or otherwise, to support that finding.

 We begin with a review of the legal principles applicable to a denial of unemployment benefits because of willful misconduct. Although the Law does not define the term "willful misconduct," it has been judicially defined as follows:

a) wanton or willful disregard for an employer's interests; b) deliberate violation of an employer's rules; c) disregard for standards of behavior which an employer can rightfully expect of an employee; or d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Bruce v. Unemployment Compensation Board of Review,* 2 A.3d 667, 671 (Pa. Cmwlth.), *appeal denied,* 608 Pa. 656, 12 A.3d 753 (2010). Whether an employee's conduct constitutes willful misconduct is a question of law for our review. *Dodson v. Unemployment Compensation Board of*

---

6. Our review is limited to determining whether constitutional rights were violated, whether an error of law has been committed, or whether necessary findings of fact are supported by substantial evidence. *Roberts v. Unemployment Compensation Board of Review,* 977 A.2d 12, 16 n. 2 (Pa.Cmwlth.2009).

7. The Referee did not expressly consider this issue because she determined the sick leave policy was unreasonable. However, the Referee did find as fact that Claimant "had been advised, in the past, to spend time outside because of her depression and anxiety." Referee's Decision/Order at 2; Finding of Fact No. 19.

*Review,* 63 Pa.Cmwlth. 245, 437 A.2d 1080, 1082 (1981).

Our Supreme Court has held as follows with respect to work rule violations:

> If the employer alleges willful misconduct because the claimant violated a work rule, the employer must prove both the existence of the rule and its violation.... We then decide if the violation constituted willful misconduct. In doing so, we examine whether "the rule or policy is reasonable in light of all the circumstances and if so, whether the employee [had] good cause to violate the rule or policy." *Spirnak v. Unemployment Compensation Board of Review* [125 Pa.Cmwlth. 354], 557 A.2d 451, 453 (Pa.Cmwlth.1989). Reasonableness is determined by whether the employer's application of the rule under the circumstances is fair, just and appropriate to pursue a legitimate interest. *Id.*

*Caterpillar, Inc. v. Unemployment Compensation Board of Review,* 550 Pa. 115, 123, 703 A.2d 452, 456–57 (1997) (citation omitted).

Here, the Referee held that Employer's sick leave policy was not reasonable because it prohibits employees who are off sick from engaging in most activities except resting. We disagree. Employer's sick leave policy is demanding, but that does not mean it is unreasonable. To be reasonable, the policy and its application under the circumstances presented must be "appropriate to pursue a legitimate interest." *Id.* at 123, 703 A.2d at 457. Preventing the fraudulent use of sick time serves a legitimate interest of any employer and, in this case, the prohibited activities in Employer's sick leave policy are reasonably related to that objective. Employer's policy does not inhibit an employee from taking sick leave; rather, it requires the employee to behave in a manner consistent with being absent from work due to illness. Performing yard work or other chores is, therefore, prohibited. Simply relaxing outdoors is not.

We are not persuaded by the Board's argument that Employer's application of the policy to Claimant was unreasonable because she suffers from depression and anxiety and should not be prevented from doing limited activities outside that might enhance her well-being and make her feel better. Claimant's depression and anxiety are irrelevant to the reasonableness of Employer's policy because she called in sick on the days in question due to "stomach problems." The relevant inquiry is whether it is reasonable for Employer to expect that an employee who is unable to come to work because of stomach problems should be equally unable to perform yard work and other chores. We find that such an expectation is reasonable.

Having determined that Employer's policy was unreasonable, the Referee did not render specific findings on whether Claimant violated the policy and, if so, whether Claimant satisfied her burden to establish good cause for her actions. *Bruce,* 2 A.3d at 671. We will not usurp the fact-finding role of the Board on these issues and, accordingly, we remand for the Board to make additional findings based upon the existing record.

## ORDER

AND NOW, this 6th day of January, 2012, the order of the Unemployment Compensation Board of Review in the above-captioned matter, dated March 11, 2011, is REVERSED and the matter REMANDED to the Board to render additional findings and conclusions consistent with the Court's opinion. Jurisdiction relinquished.