# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric J. Vanbenthuysen,           :
            Petitioner     :
                     :
            v.                :    No. 1842 C.D. 2016
                     :    Submitted: March 31, 2017
Unemployment Compensation    :
Board of Review,               :
            Respondent    :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE JULIA K. HEARTHWAY, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED: August 1, 2017**

Eric J. Vanbenthuysen (Claimant) petitions for review of the Order of the Unemployment Compensation (UC) Board of Review (Board) affirming the Decision of a UC Referee (Referee) finding Claimant ineligible for UC benefits pursuant to Section 402(e) of the UC Law (Law).[1] Claimant argues that Classic Granite, LLC (Employer) did not meet its burden of proving, with substantial evidence, that he was discharged for committing willful misconduct and, if it did,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (providing, in relevant part, that an employee is ineligible for UC benefits for any week the employee's unemployment is due to discharge or temporary suspension from work for willful misconduct connected with the employee's work).

he had good cause for his actions. He also asserts the Referee did not follow the rules of practice and procedures for UC hearings because she acted as Employer's advocate. Because there is substantial evidence to support that Claimant engaged in and was discharged for willful misconduct and the Referee complied with the hearing procedures, we affirm.

Claimant worked for Employer as a full-time helper from December 2015 until May 20, 2016, when he was discharged. Claimant applied for benefits, asserting Employer discharged him because it did not have any light-duty work, which he needed due to a work-related injury. Employer did not respond to a request for an oral interview. The Local UC Service Center found Claimant not ineligible for benefits pursuant to Section 402(e), and Employer appealed. The Referee held a hearing, at which documentary evidence was presented, and Employer's owners, Anastasia and Rafal Kolawa (together, Owners), and Claimant testified.[2] Following the hearing, the Referee issued the following findings of fact:

> 1. The claimant was employed from around December, 2015 through May 20, 2016 as a full-time helper with [Employer], earning $20 per hour.
>
> 2. The employer has an attendance policy that after [2] days of reporting off sick, any other illness will require a doctor's note in order to be excused.
>
> 3. The employer has an unwritten policy that employees are required to call the employer to notify any absence or tardiness in order for the employer to find a replacement.
>
> 4. The claimant was aware of the employer's expectations and policies.

_____

[2] Mrs. Kolawa represented Employer, and Claimant had counsel.

5.   The claimant had previously worked for the employer and upon his re-hire the employer sat down with the claimant to make sure he understood the employer's expectations regarding attendance.

6.   The employer has a 3 strikes you're out policy with a verbal warning, written warning and final warning.

7.   The claimant should have been aware of the employer's policy.

8.   The claimant was absent from work on February 17, 2016 and was contacted by the employer to find out where he was when he was supposed to work at 7:00 a.m.

9.   The claimant received a written warning on February 18, 2016 for his failure to contact the employer before the start of his scheduled shift to report his absence.

10.  On March 28, 2016, the claimant reported off work and did not provide a doctor's note to support his absence and received a written warning due to already using two sick days.

11.  On May 9, 2016, the claimant failed to report for his scheduled shift and failed to call the employer to report his absence.

12.  The claimant reported to work on May 10, 2016 and provided a doctor's note.

13.  The claimant was advised that due to his no-call/no-show, he was receiving a final written warning, which he signed.

14.  After this incident, the employer discovered that on May 6, 2016, the claimant clocked in at 6:59 a.m. and clocked out at 4:18 p.m. and [had] gone to a doctor's appointment without notifying the employer.

15.  The claimant did not request off work to go to a doctor's appointment on May 6, 2016.

16.  When the employer questioned the claimant about whether he went to a doctor's appointment on May 6, 2016 during work hours, the claimant denied and alleged he went after work hours.

3

17. The employer contacted Med Express to clarify when the claimant had gone to his medical appointment, to which the claimant indicated he had gone during work hours.

18. On May 20, 2016, the claimant was discharged from his employment, with a final incident of May 6, 2016 for going to a doctor's appointment on company time without notifying the employer and getting paid for it.

(Referee Decision, Findings of Fact (FOF) ¶¶ 1-18.) The Referee concluded Employer's "3 strikes you're out policy" (Three Strikes Policy) was "very easily interpreted and is verbal regarding attendance." (Referee Decision at 3.) The Referee found Claimant's conduct on February 17, March 28, and May 9, 2016 violated Employer's attendance policies, expressly crediting Owners' testimony over Claimant's contrary testimony. Additionally, the Referee considered Claimant's going to the doctor on May 6, 2016 during work hours without advising Employer "doing personal business during work hours and getting paid for it" as his final incident. (*Id.*) The Referee found Claimant ineligible for benefits because "[C]laimant's conduct was contrary to the standards of behavior which the employer has the right to expect." (*Id.*)

Claimant appealed to the Board, which concluded the Referee's determination was proper under the Law. The Board "credit[ed] the testimony of the employer's witnesses that the claimant reported off from work via text message after the start of his shift on both February 17, 2016 and May 9, 2016," and noted Claimant "received warnings for both of those incidents." (Board Order.) Therefore, the Board "adopt[ed] and incorporate[d] the Referee's findings and

4

conclusions" as its own and affirmed. (*Id.*) Claimant now petitions this Court for review.[3]

Claimant raises numerous challenges to the determination that he is ineligible for benefits pursuant to Section 402(e) of the Law. He first argues Employer did not meet its burden of proof because: it did not establish that it had clear rules of which Claimant was aware; it did not establish Claimant's violation of those rules; and its rule requiring a doctor's note after two absences due to illness is unreasonable. As part of this argument, Claimant specifically challenges numerous findings of fact as not being supported by substantial evidence because Owners' testimony and Employer's written warnings and notices (Warnings) are confusing, unclear, and/or conflicting.

The following legal principles guide us in reviewing Claimant's allegations. Section 402(e) of the Law provides, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e). While the Law does not define "willful misconduct," our Supreme Court has defined it to include a "deliberate violation of an employer's rules" or a "disregard for standards of behavior which an employer can rightfully expect of an employee." *Caterpillar, Inc. v. Unemployment Comp. Bd. of Review*, 703 A.2d 452, 456 (Pa. 1997). "Where a violation of the employer's work rule is alleged to be the basis for termination of

---

[3] "The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in the record." *W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Review*, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006).

5

employment, the employer must show that the rule existed, that the rule was reasonable and that the claimant was aware of the rule and violated it." *Oyetayo v. Unemployment Comp. Bd. of Review*, 110 A.3d 1117, 1121 (Pa. Cmwlth. 2015). Moreover, receiving pay for hours not worked or using work time to attend to personal affairs without authorization can constitute willful misconduct. *Temple Univ. v. Unemployment Comp. Bd. of Review*, 772 A.2d 416, 419 (Pa. 2001); *Oyetayo*, 110 A.3d at 1124. If the employer meets its burden of proving willful misconduct, the burden shifts to the claimant to show good cause for his actions. *McKeesport Hosp. v. Unemployment Comp. Bd. of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993). "A claimant has good cause if his . . . actions are justifiable and reasonable under the circumstances." *Docherty v. Unemployment Comp. Bd. of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006). Whether a claimant's conduct rises to the level of willful misconduct is a question of law reviewable by this Court. *Id.*

We are also mindful that the Board is the ultimate fact-finding body and "[q]uestions of credibility and the resolution of evidentiary conflicts are within the discretion of the [Board] and are not subject to re-evaluation on judicial review." *Bell v. Unemployment Comp. Bd. of Review*, 921 A.2d 23, 26 n.4 (Pa. Cmwlth. 2007). "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Review*, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006). Substantial evidence is "such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." *Guthrie v. Unemployment Comp. Bd. of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Employer, as the prevailing party before the Board, is entitled to "the benefit of all

inferences that can logically and reasonably be drawn from the testimony" to determine if substantial evidence exists for the findings. *U.S. Banknote Co. v. Unemployment Comp. Bd. of Review*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990) (quoting *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977)). A party's belief that a different version of events occurred does not create grounds for judicial reversal if substantial evidence supports the findings. *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108–09 (Pa. Cmwlth. 1994). "It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made." *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

Claimant first asserts Employer did not prove what exactly its rules entail or that Claimant was aware of all of the rules. Therefore, he argues, findings of fact 3, 4, and 7 (relating to the rules' existence and Claimant's awareness of those rules) are not supported by substantial evidence. A review of the record, however, reveals that, although Owners' testimony was imprecise and confusing at times, there is substantial evidence to support these findings of fact.

Mrs. Kolawa testified that, when Claimant was re-hired, she explained to him that, if he was sick, he was to call Employer in the morning before work began or as soon as he knew he was sick if it was before that time, and **Claimant said "Fine. That's what I'll do**." (Hr'g Tr. at 22-24 (emphasis added).) Mr. Kolawa stated that Claimant was told when he was re-hired that he had two sick days a year after which he had to bring in a doctor's excuse and that, if he was sick, Claimant was expected to call before the beginning of his shift or as soon as he knew he would be calling off. (*Id.* at 45-46.) Claimant himself agreed that

7

Employer discussed this sick leave policy prior to his return to work. (*Id.* at 66-67.) The Board, in adopting the Referee's findings, credited Employer's evidence. A reasonable mind would accept such credited evidence, viewed in the light most favorable to Employer, as support for the findings related to the rules' requirements and Claimant's knowledge thereof.

Claimant next asserts Employer's evidence does not clearly establish how he violated Employer's rules on February 17, March 28, May 6, and May 9, 2016, or how he was warned. Thus, Claimant argues findings of fact 8, 9, 10, 11, 13, and 18 (related to Claimant's violations and the warnings he received) are not supported by substantial evidence. Again, after reviewing the record, there is substantial evidence to support those findings.

Owners credibly testified Claimant: did not call off before his shift began on February 17, 2016, and only contacted Employer, via text, after Employer called him to ask where he was; and Claimant was sick on March 28, 2016, after he had already used his two sick days, and did not submit a doctor's note for that day. (*Id.* at 17-18, 21, 28, 48-52.) Mr. Kolawa stated that, on May 9, 2016, Claimant did not contact Employer prior to the beginning of his shift that he would be absent. (*Id.* at 53-54.) Mrs. Kolawa also testified Claimant went to Med Express on May 6, 2016, for an hour and a half on company time without advising Employer that he was doing so. (*Id.* at 30-32.) Mr. Kolawa explained his employees know that if they want to do a personal errand during the work day they are to tell him, and Claimant did not do so on May 6, 2016. (*Id.* at 54-55, 57.) Claimant himself testified he only provided a doctor's note for his May 9, 2016 absence and agreed that he did not tell Employer of the May 6, 2016 appointment. (*Id.* at 75-76.) The Warnings for February 17, March 28, and May 9, 2016, which Claimant signed, all

8

describe the type of violation (attendance) and indicate that Claimant was being warned. (Exs. E-2, E-4, 2g.) The May 9, 2016 Warning specifically indicates that it was a verbal and written warning and that it was a **final** warning. (Ex. E-4.) Although Claimant testified he complied with Employer's call off procedures (Hr'g Tr. at 65, 69-70, 75), Employer's contrary evidence was credited. This credited evidence constitutes substantial evidence that supports the findings that Claimant violated Employer's rules on these particular days and was provided warnings for those violations.

Claimant also argues Employer did not prove that its rule requiring a doctor's note after using two sick days is reasonable. Claimant asserts it is patently unreasonable because two days is a very low number of days and Employer does not provide health insurance to its employees, so to obtain a doctor's note would require the employee to pay out-of-pocket.

In reviewing the reasonableness of a work rule, we look to whether it "is reasonable in light of all the circumstances" and whether its application "is fair, just and appropriate to pursue a legitimate interest." *Caterpillar, Inc.*, 703 A.2d at 456-57. A rule that is "demanding" is not necessarily unreasonable. *Chambersburg Hosp. v. Unemployment Comp. Bd. of Review*, 41 A.3d 896, 900 (Pa. Cmwlth. 2012). Here, Employer's rule does not preclude employees from taking sick leave. It gives employees two sick days, after which they must provide a doctor's note proving that the employee is sick in order for the day to be an excused absence. Mr. Kolawa explained that Employer needs this rule because it is "a small company, so [it] . . . count[s] on [its] employee[s]" to be at work so it can prepare and complete its granite installation jobs for customers. (Hr'g Tr. at 45.) Because this rule, which may be demanding, aids Employer in its legitimate

9

purpose of ensuring that it can meet its obligations to its customers and there is no assertion that the rule has been applied unfairly or unjustly, the rule is not unreasonable.

Based on the findings made, which are supported by Employer's credited evidence, Employer met its burden of proof. Therefore, the burden shifted to Claimant to establish he had good cause for his actions. Claimant asserts he had good cause for his absence on May 9, 2016, and for going to Med Express on May 6, 2016, during work hours because both were related to his work injury.

Claimant was discharged following the final incident of his performing a personal errand on company time without advising Employer of his medical appointment. (FOF ¶ 18.) Although that appointment, and the May 9, 2016 absence, may have been connected to a work-related injury, this does not excuse Claimant from having to inform Employer that he would be attending a medical appointment during the work day or from calling off in accordance with Employer's call-off rule. When asked why he did not inform Employer of the appointment, Claimant stated "I don't know," "Don't know," and that he "just didn't." (Hr'g Tr. at 77.) Claimant also said, when confronted by Employer, that he had gone after work, which he later admitted was not accurate. (*Id.* at 33-35; FOF ¶¶ 16-17.) Under these circumstances, Claimant's actions were not justifiable or reasonable.

Claimant next argues Employer's asserted reason for discharging him is pre-textual, and he was really fired because Employer did not have light-duty work for him. There was conflicting testimony about Employer's reason for discharging Claimant, Employer's evidence was credited, and, as discussed above, this evidence supports that he was discharged, pursuant to the Three Strikes Policy, for

violating Employer's attendance policies more than three times. That Claimant believes a different version of events occurred does not create grounds for judicial reversal because substantial evidence supports the findings.[4] *Tapco, Inc.*, 650 A.2d at 1108–09.

Finally, Claimant maintains the Referee did not impartially discharge her duties as required by Section 101.21(a) of the Board's Regulations, 34 Pa. Code § 101.21(a), but acted as an advocate for Employer during the hearing. Claimant further asserts the Referee should have allowed Claimant to answer questions regarding his work-related injuries and restrictions.

Section 101.21(a) of the Board's regulation provides:

> In a hearing the tribunal may examine the parties and their witnesses. Where a party is not represented by counsel the tribunal before whom the hearing is being held should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of its official duties.

34 Pa. Code § 101.21(a). "[R]eferees should reasonably assist pro se parties to elicit facts that are probative for their case" and have the "responsibility . . . to assist a pro se [party] at a hearing," in order to adequately develop the facts necessary for a decision "to insure that compensation will not be paid in cases in

---

[4] To the extent Claimant appears to assert there was disparate treatment of him and a co-worker, who had also gone to the doctor at the same time on May 6, 2016, but was only suspended for doing so, there is no evidence the co-worker was similarly situated to Claimant. Thus, Claimant cannot establish this affirmative defense. *Geisinger Health Plan v. Unemployment Comp. Bd. of Review*, 964 A.2d 970, 974 (Pa. Cmwlth. 2009) (stating the affirmative defense of disparate treatment requires a claimant to show that the employer discharged claimant, but not the "other employees who engaged in similar conduct"; the claimant and the other employees were similarly situated; and the claimant was discharged based on an improper criterion).

which the claimant is not eligible and that compensation will be paid if the facts, **thoroughly developed**, entitled the claimant to benefits." *Hackler v. Unemployment Comp. Bd. of Review*, 24 A.3d 1112, 1115 (Pa. Cmwlth. 2011) (quoting *Bennett v. Unemployment Comp. Bd. of Review*, 445 A.2d 258, 259 (Pa. Cmwlth. 1982)) (emphasis in original). Referees are not, however, to assume the role as advocate for the pro se party. *Stugart v. Unemployment Comp. Bd. of Review*, 85 A.3d 606, 609 (Pa. Cmwlth. 2014).

After carefully reviewing the record, we discern no violation of the regulation by the Referee in this matter. Here, Claimant was represented by counsel at the hearing, but Employer was acting pro se. Employer's witnesses were, at times, disorganized and imprecise, and the Referee assisted them to the extent it was necessary to thoroughly develop the facts necessary to make a determination on Claimant's eligibility. Although the Referee questioned Owners and sometimes referenced the other Owner's testimony in doing so, it was in an attempt to clarify the testimony and obtain information relevant to Claimant's eligibility for benefits. She also asked Claimant questions to elicit facts necessary to make that determination. This was her responsibility under the regulation. Moreover, there was nothing improper in the Referee not permitting Claimant to go into great detail about his work-related injuries. The Referee acknowledged the conflict regarding why Claimant was discharged, and she allowed some testimony and evidence about the doctor's notes restricting Claimant to light-duty work and Claimant's belief he was discharged as a result. (Hr'g Tr. at 43-44, 62-63, 67, 80-82, 85.) That the Referee did not allow Claimant to go into **specific** detail on his workers' compensation claim does not mean she was advocating for Employer or

12

violated the regulation because those details were not relevant to the question before her – Claimant's eligibility for **UC** benefits.

Because Employer met its burden of proving that Claimant engaged in and was discharged for willful misconduct and the Referee complied with the hearing procedures, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric J. Vanbenthuysen,                          :
                              Petitioner        :
                                                :
              v.                                :        No. 1842 C.D. 2016
                                                :
Unemployment Compensation                       :
Board of Review,                                :
                              Respondent        :

# **O R D E R**


   **NOW**, August 1, 2017, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.


                              _____
                              **RENÉE COHN JUBELIRER,** Judge