# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

KPMM Keystone Property Management : <br>
& Maintenance, Allentown : <br>
Division LLC, : <br>
              Petitioner : <br>
: No. 423 C.D. 2024 <br>
          v. : <br>
: Submitted: March 4, 2025 <br>
Unemployment Compensation : <br>
Board of Review, : <br>
              Respondent :

BEFORE:    HONORABLE ANNE E. COVEY, Judge <br>
                HONORABLE LORI A. DUMAS, Judge <br>
                HONORABLE MATTHEW S. WOLF, Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY** <br>
**JUDGE DUMAS**                               **FILED: March 27, 2025**

        KPMM Keystone Property Management & Maintenance, Allentown Division LLC (Employer), petitions for review from the determination of the Unemployment Compensation Board of Review (Board) granting Terrence Henry (Claimant) unemployment compensation (UC) benefits. In its determination, the Board reversed the Referee's decision that affirmed the determination of the Department of Labor and Industry, Office of Unemployment Compensation Benefits (Department), finding Claimant ineligible for UC benefits on the basis that his termination constituted willful misconduct pursuant to Section 402(e) of the UC Law

(Law).[1]  After careful consideration, we find that substantial evidence supports the Board's conclusion that Employer failed to prove willful misconduct.  Accordingly, we affirm.

## I. BACKGROUND[2]

Claimant was employed as a full-time property maintenance worker by Employer, and his workday consisted of completing scheduled tasks assigned by management each day.  Generally, after Claimant completed all assigned tasks, he would ask and receive permission to leave for the day.

As the result of a work-related back injury, Claimant required accommodations restricting the types of tasks he was able to perform, and his work hours had decreased due to his limitations and ongoing treatment for the injury.  Claimant was absent from work on August 16 and 17, 2023.  *See* Tr. of Test., 12/28/23, at 6.  On Friday, August 18, 2023, Claimant's only task for that day was to remove two stickers from a window.  Because Claimant's supervisor agreed that the sticker removal could wait until Monday, August 21, 2023, Claimant did not come in to work that Friday.  However, on Monday, Claimant was terminated for excessive absenteeism.

Subsequently, Claimant applied for UC benefits, and the Department issued a "Disqualifying Separation Determination" (determination) finding Claimant ineligible for UC benefits on the basis that his separation from employment with Employer constituted willful misconduct.  Claimant appealed the Department's determination, and after a proper hearing, the Referee affirmed, finding Claimant

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee is ineligible for compensation for any week that his unemployment is the result of his discharge from work due to willful misconduct.

[2] Unless otherwise stated, we adopt the factual background for this case from the Board's decision, which is supported by substantial evidence of record.  *See* Bd. Dec., 3/19/24.

ineligible for UC benefits under Section 402(e) of the Law.  Claimant appealed the Referee's decision to the Board, which reversed the Referee's decision, finding that Claimant was eligible for benefits under Section 402(e) of the Law.  The Board reasoned that although Employer attributed Claimant's reduced hours to an attendance issue, and that those absences were excessive, Claimant had good cause for the absences, including the final one, on August 18, 2023.  Employer appealed to this Court.

## II. ISSUES

Employer presents two issues for our review.  First, Employer asserts that the Board's findings are not supported by substantial evidence, for Employer satisfied its burden of proving willful misconduct through Claimant's many absences.  *See* Emp.'s Br. at 5, 12, 14-19.  Second, Employer contends that the Board violated its due process rights by failing to inform Employer about numerous *ex parte* submissions by Claimant.[3]  *See id.* at 5, 12-13, 19-23.

## III. DISCUSSION[4]

### A. Substantial Evidence

Employer asserts that there is not substantial evidence to support the Board's conclusion that Claimant is eligible for UC benefits.  *See id.* at 15-19.

---

[3] Employer also contends that Pennsylvania Representative Joshua Siegel submitted a letter *ex parte* on Claimant's behalf, urging the Board to consider the *ex parte* records submitted by Claimant.  *See* Employer's Br. at 21-23; *see also* Ex. Bd. 008.  Although true, our review of the record reveals no indication that the Board considered this letter when reaching its decision.  *See generally* Bd. Dec., 3/19/24.  In fact, the Board acknowledged Claimant's attempts to "supplement the record with additional[ ] evidence not presented to the [R]eferee" and affirmed that it could not consider such evidence, as it constituted extra-record material.  *See* Bd. Dec., 3/19/24, at 3.

[4] On appeal, our review is limited to "determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated."  *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 135 n.4 (Pa. Cmwlth. 2022).

3

According to Employer, Claimant was terminated for excessive absenteeism, and the Board failed to "take into account the fact[s] that [Claimant] missed 49 days of work, Claimant was previously warned for his continued absenteeism, and that Claimant did not offer sufficient explanations for the 49 absences." *Id.* at 5, 14-19. Thus, Employer requests that this Court reverse the Board's decision and "affirm the Referee's decision that Claimant is ineligible for [UC] benefits." *Id.* at 22.

The Board responds, asserting that Employer did not meet its burden of proving that Claimant was terminated for willful misconduct, for it is not willful misconduct to be absent from work when a supervisor agrees to the absences. *See* Bd.'s Br. at 5, 7-12. Upon review, we agree with the Board.

Substantial evidence is relevant evidence that a reasonable person may accept as adequate to support a conclusion. *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 136 (Pa. Cmwlth. 2022). When there is substantial evidence to support the Board's findings, they are conclusive on appeal, even if there is contrary evidence of record. *Cambria Cnty. Transit Auth. ("CamTran") v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019). As the ultimate fact finder, the Board has the authority to determine the weight of the evidence and assess witness credibility, and it is free to accept or reject any testimony, in whole or in part. *Id.* The resolution of credibility questions and evidentiary conflicts falls within the Board's discretion and such determinations "are not subject to re-evaluation on judicial review." *Id.* (internal citation omitted).

On appeal, we must examine the testimony in the light most favorable to the prevailing party, affording that party the benefit of all logical and reasonable inferences. *Id.* Whether the record contains evidence supporting findings other than those made by the Board is irrelevant; "the critical inquiry is whether there is

4

evidence to support the findings actually made." *Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018).

Willful misconduct is defined as (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of behavioral standards an employer can rightfully expect from an employee; or (4) negligence demonstrating an intentional disregard of the employer's interests or the employee's duties. *Pierce-Boyce*, 289 A.3d at 135. To establish willful misconduct, an employer must prove the existence of a work rule, the reasonableness of the rule, the claimant's knowledge of the rule, and the claimant's subsequent violation of the rule. *Id.* at 136.

Excessive absenteeism can constitute willful misconduct. *O'Leary v. Unemployment Comp. Bd. of Rev.*, 300 A.3d 552, 555 (Pa. Cmwlth. 2023). Employers have "the right to expect that . . . employees will attend work when they are scheduled, that they will be on time, and that they will not leave work early without permission." *Id.* (quoting *Grand Sport Auto Body v. Unemployment Comp. Bd. of Rev.*, 55 A.3d 186, 190 (Pa. Cmwlth. 2012).

Once an employer satisfies this burden, the burden shifts to the claimant to demonstrate that his actions were justified or reasonable under the circumstances, otherwise known as "good cause." *Pierce-Boyce*, 289 A.3d at 135. Good cause is evaluated in light of all the attendant circumstances. *See Dep't of Corr. v. Unemployment Comp. Bd. of Rev.*, 943 A.2d 1011 (Pa. Cmwlth. 2008). An absence due to illness can constitute good cause. *See O'Leary*, 300 A.3d at 555.

Employer's "Attendance and Punctuality" policy requires employees to notify the Human Resources Department of absences or tardiness and states that "[a]ny employee who fails to report to work without notification . . . for a period of

5

three days or more will be considered to have voluntarily terminated his or her employment status." Claimant's Ex. at 52 (Emp.'s Handbook at 23 (unpaginated)).[5] The policy also states that "[e]mployees are also expected to remain at work for their entire work schedule." *Id.* The record supports that Claimant was aware of this policy, as he referenced a portion of the employee handbook during the hearing before the Referee, and the entire handbook was admitted into evidence without objection. *See* Tr. of Test. at 15. Accordingly, there is substantial evidence that Employer had an attendance policy, and that Claimant was aware of it.[6] *See Pierce-Boyce*, 289 A.3d at 136.

Substantial evidence also supports the Board's finding that Claimant violated Employer's attendance policy. Both Employer and Claimant testified that Claimant was hired to work 40 hours per week but frequently worked fewer than 40 hours per week from January 2023 through his termination in August 2023. *See* Tr. of Test. at 5, 12. Claimant even conceded his 49 absences.[7] *See id.* at 12-13. Given the extent of Claimant's absences and reduced hours, it is evident that he did not fully comply with Employer's attendance policy. *See* Emp.'s Handbook at 23.

Nevertheless, substantial evidence also supports the Board's conclusion that Claimant's absences were reasonable under the circumstances. *See* Bd. Dec. at

---

[5] This may be found on page 184 of the certified record. C.R. at 184.

[6] Although the reasonableness of Employer's attendance policy is not challenged, we note that its reasonableness is manifest, as an attendance policy is "appropriate to pursue [Employer's] legitimate interest" of ensuring timely attendance of its employees. *Chambersburg Hosp. v. Unemployment Comp. Bd. of Rev.*, 41 A.3d 896, 900 (Pa. Cmwlth. 2012).

[7] It is not entirely clear whether Claimant missed a total of 49 full workdays or rather if there were 49 separate instances in which he took time off from work. *See* Tr. of Test. at 12-13. At the hearing, Claimant testified that "I have 49 days missed since January to August" and justified a number of those absences. *See id.* After the Referee inquired further about the absences, Claimant stated "I missed days, but they weren't all days – and they were accommodating me with . . . the light[-]duty stuff . . . [s]o then some days I got done at 12 o'clock. Hey anything else? No, you can go home. So that's where a lot of those hours are being missed on those days." *Id.* at 13.

2-3. Employer attributed Claimant's reduced hours to an attendance issue and cited his call-off on August 18, 2023, as the basis for termination. *See* Tr. of Test. at 6. However, Claimant testified that his reduced hours resulted from medical treatment for a back injury and that he provided doctor's notes for absences due to medical appointments. *See id.* at 13. Claimant further testified that Employer, aware of his condition, assigned him fewer daily tasks, and once he completed his assigned work, Claimant would seek and receive permission to leave. *See id.* at 13. Employer did not distinguish which of Claimant's reduced hours were due to an attendance violation rather than its own scheduling decisions. *See generally* Tr. of Test. Additionally, Employer could not specify how many absences were supported by a doctor's note but conceded that at least some of Claimant's absences were for doctor's appointments or, at times, due to illness. *See id.* at 11 (Employer's witness stated, "I'm not sure exactly of all of the doctor's notes because that wasn't my department checking the doctor's notes, but I do know there [were] some given.").

Regarding Claimant's final absence on Friday, August 18, 2023, Employer testified that Claimant had called off on the prior two days as well. *See* Tr. of Test. at 6. Because Claimant did not report to work that day, Employer contended that this constituted his third consecutive absence in violation of its attendance policy. *See id;* Emp.'s Handbook at 23. However, Claimant testified that he spoke with his supervisor and was informed that his only assigned task for the day—removing two stickers from a window—could wait until Monday, August 21, 2023. *See* Tr. of Test. at 13-14. Further, the Board noted that Employer's witness lacked firsthand knowledge of this conversation, and Claimant's supervisor did not testify at the hearing. *See* Bd.'s Dec. at 2; *see generally* Tr. of Test.

7

Accordingly, viewing the testimony in the light most favorable to Claimant as the prevailing party, *see Sipps*, 181 A.3d at 484, we conclude that substantial evidence supports the Board's finding that Claimant's absences were reasonable given his ongoing medical treatment and Employer's awareness of his condition. *See Pierce-Boyce*, 289 A.2d at 136. Because Employer failed to meet its burden of proving willful misconduct and Claimant demonstrated good cause for his absences, Claimant is eligible for UC benefits. *Id.*

## B. Violation of Due Process

Employer also asserts a violation of its due process rights when Claimant submitted *ex parte* evidence with his appeal to the Board. *See* Emp.'s Br. at 21. According to Employer, these submissions influenced the Board's decision, leading it to depart from the Referee's determination. *Id.* at 22. Specifically, Employer asserts that because the Board did not "address the multitude of Claimant's absences," and Claimant's *ex parte* submissions "center around documentation from his doctors regarding tardiness and reduction of hours," the Board's decision was improperly impacted. *Id.* As a remedy, Employer requests that this Court remand the matter to the Board "for a new hearing to allow both parties to address the *ex parte* evidence presented by Claimant and allow Employer to provide any additional evidence in response to the *ex parte* evidence submitted by Claimant." *Id.* at 22-23.

"The [Board] cannot review evidence that was not submitted to the Referee, unless it directs the taking of additional evidence." *Umedman v. Unemployment Comp. Bd. of Rev.*, 52 A.3d 558, 564 (Pa. Cmwlth. 2012); *see also* 34 Pa. Code § 101.106.

8

The mere fact that the Board reached a different conclusion than the Referee does not establish that it improperly relied on *ex parte* submissions. There is no indication in the Board's findings of fact or decision that it considered or referenced the *ex parte* materials. *See generally* Bd. Dec. To the contrary, the Board explicitly stated that "[C]laimant's appeal attempts to supplement the record with additional [sic] evidence not presented to the [R]eferee, which the Board cannot consider as it is extra-record evidence." Bd.'s Br. at 12. Despite Employer's concerns, the Board acknowledged the *ex parte* evidence but expressly declined to take such evidence into consideration. *See* Bd. Dec. at 3.

Without evidence that the Board actually relied on these materials, Employer's due process claim lacks merit. Thus, while we agree that the Board cannot consider extra-record evidence, we decline to remand this matter for further proceedings.

## IV. CONCLUSION

Substantial evidence exists to support the Board's conclusions that Employer failed to meet its burden of proving that Claimant was discharged for willful misconduct and that Claimant is eligible for UC benefits. *Pierce-Boyce*, 289 A.3d 136. Further, the Board complied with due process by refraining from considering Claimant's *ex parte* submissions. *Umedman*, 52 A.3d at 564.

Accordingly, we affirm.

_____
**LORI A. DUMAS, Judge**

9

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

KPMM Keystone Property Management :
& Maintenance, Allentown :
Division LLC, :
          Petitioner :
                : No. 423 C.D. 2024
        v. :
                :
Unemployment Compensation :
Board of Review, :
          Respondent :

## **O R D E R**

AND NOW, this 27th day of March, 2025, the order of the Unemployment Compensation Board of Review, entered March 19, 2024, is AFFIRMED.

                      _____

                      **LORI A. DUMAS, Judge**