**Amy SHUPP, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 25, 2011.

Decided April 21, 2011.

Reargument Denied June 21, 2011.

---

Adam D. Meshkov, Easton, for petitioner.

Janet M. Tarczy, Assistant Counsel, Harrisburg, for respondent.

Jill E. Mancini, Bethlehem, for intervenor Karl F. Longenbach, Esquire.

BEFORE: LEADBETTER, President Judge, and McCULLOUGH, Judge and BUTLER, Judge.

OPINION BY Judge BUTLER.

Amy Shupp (Claimant) petitions this Court for review of the August 23, 2010 order of the Unemployment Compensation Board of Review (UCBR) affirming the decision of a Referee and denying benefits accordingly. There are three issues before the Court: (1) whether it was error for the Referee to conclude that Claimant voluntarily quit her employment without cause of a necessitous and compelling nature, (2) whether the Referee's findings of fact are supported by substantial evidence, and (3) whether the Referee's denial of Claimant's counsel's subpoena request constituted an abuse of discretion or an error of law. For the reasons that follow, we reverse the UCBR's order.

Claimant was hired by Karl F. Longenbach, Esquire (Employer) as a paralegal beginning in January of 2001 and ending February 12, 2010. Claimant was advised that she would receive her pay every Friday. Throughout her nine years of working for Employer, however, she routinely received her pay one or two weeks late, and on occasion three or four weeks late.

On February 11, 2010, Claimant sent an email to Employer stating that as of February 12, 2010, she believed she was owed four weeks pay. On February 12, 2010, Claimant reported for work and found two paychecks on her desk. She was still owed the week ending February 5, 2010, and the week ending February 12, 2010. Claimant emailed Employer asking if he was going to respond to her previous email. Employer responded by email telling Claimant how important she was to his office, and that there were some issues they needed to discuss in person. Claimant attempted to contact Employer by phone but could not reach him. She subsequently emailed Employer that she had left the office and had already applied for unemployment compensation (UC) benefits.

■ On March 4, 2010, the Allentown UC Service Center mailed a notice of determination denying benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1] Claimant appealed,

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).

and a hearing was held by the Referee. On April 28, 2010, the Referee mailed his decision affirming the determination of the UC Service Center. Claimant appealed to the UCBR. The UCBR affirmed the Referee's decision as modified.[2] Claimant appealed to this Court.[3]

■ Claimant argues that it was an error of law for the Referee to conclude that she voluntarily quit her employment without cause of a necessitous and compelling nature. Specifically, Claimant contends the evidence proves that she quit her employment because of Employer's failure to pay her in a timely manner and on an established payday. She contends that this constituted a compelling and necessitous reason to quit her job. We agree.

■ It is well established that:

An employee who claims to have left employment for a necessitous and compelling reason must prove that: (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve her employment.

*Brunswick Hotel & Conf. Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 660 (Pa.Cmwlth.2006). Where an employee terminates an employment relationship because of the employer's repeated failure to pay wages in a timely manner and on an established pay day, Pennsylvania's Wage Payment and Collection Law[4] is implicated. Section 4 of the Wage Payment and Collection Law generally provides:

It shall be the duty of every employer to notify his employes at the time of hiring of the time and place of payment and the rate of pay and the amount of any fringe benefits or wage supplements to be paid to the employe ... or ... for the benefit of the employee....

43 P.S. § 260.4. Moreover, Section 3 of the Wage Payment and Collection Law is absolutely explicit in its statement that: "Every employer shall pay all wages ... due to his employes on regular paydays designated in advance by the employer." 43 P.S. § 260.3. Thus, employees are well within their rights to demand timely payment for work performed. Indeed, payment as agreed for services rendered is the very essence of an employment relationship, such that no *employee* can be compelled to work without payment.

Furthermore, Section 7 of the Wage Payment and Collection Law clearly states: "No provision of this act shall in any way be contravened or set aside by a private agreement." 43 P.S. § 260.7. We acknowledge the Referee's finding that Claimant previously accepted erratic payment as part of the terms and conditions of her employment (Reproduced Record (R.R.), Item No. 12 (Finding of Fact No. 11)), and the UCBR's conclusion that Claimant did not produce sufficient evi-

---

2. The Referee's Finding of Fact No. 26 originally stated: "The claimant voluntarily terminated her employment because she wasn't paid in a timely manner." The UCBR modified it to read: "The claimant voluntarily terminated her employment *alleging* that she was not paid in a timely manner." Reproduced Record (R.R.), Item No. 12, Item No. 17 (emphasis added).

3. This Court's review is limited to determining whether the findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether errors of law were committed. *Johnson v. Unemployment Comp. Bd. of Review*, 869 A.2d 1095 (Pa.Cmwlth.2005).

4. Act of July 14, 1961, P.L. 637, *as amended*, 43 P.S. §§ 260.1–260.12.

dence that she informed Employer that intermittently late paychecks were no longer acceptable (R.R., Item No. 17). However, it is clear that under the cited provisions of the Wage Payment and Collection Law, erratic and intermittently late payments are unacceptable as a matter of law.

Accordingly:

This Court has held that several instances of tardy wage payments resulting in employee protest and refusal by the employer to guarantee timely payment of wages as demanded by the employee can constitute necessitous and compelling cause for that termination.

*Warwick v. Unemployment Comp. Bd. of Review,* 700 A.2d 594, 597 (Pa.Cmwlth. 1997) (citation omitted).

Here, it is undisputed that Employer routinely failed to pay Claimant in a timely manner. It is also undisputed that Claimant had complained to Employer about said late payments. In fact, Claimant had actually quit her job approximately one year prior because Employer "fell eight to nine weeks behind" in her pay. R.R., Item No. 11 at 4. She returned to work because Employer paid all of her back wages. Since then he had fallen behind two to three weeks on two occasions, once before her vacation and once before Christmas. In both of those instances, when Claimant informed Employer that she needed to be paid because of her vacation and the approaching Christmas holiday season, Employer paid her. This final occasion, Claimant emailed Employer on a Thursday to advise him that as of the next day he would be four weeks behind in her pay. As stated, Employer did not respond to her email but did leave two weeks worth of paychecks on her desk for when she arrived Friday morning. In Claimant's follow-up email, she asked whether Employer could afford to keep her on staff, and let Employer know it was urgent that they discuss the lateness of her paychecks. He responded with an email stating, in relevant part: "I started reading your email but didn't finish reading it as I was too busy working.... There are pros and cons working in my office. The ups and downs of income flow need not be described." R.R., Item No. 11 at C–3.

This Court's opinion in *Warwick* indicates, without examination of the Wage Payment and Collection Law, that claimants must request a guarantee of adherence to a rigid payment schedule after protesting tardy payments in order to retain eligibility for unemployment compensation. *See Warwick,* 700 A.2d at 597 (citing *Koman v. Unemployment Comp. Bd. of Review,* 61 Pa.Cmwlth. 604, 435 A.2d 277 (1981)). Given that the Wage Payment and Collection Law already requires adherence to a rigid payment schedule, we hold that it is sufficient for employees to complain of late payments, so long as the employer is afforded a reasonable opportunity to address the employee's complaints.

Clearly, failure to make timely payment for services rendered creates a real and substantial pressure upon an employee to terminate employment. Without question, repeat occurrences would cause a reasonable person to terminate employment. Here, Claimant acted with ordinary common sense when she emailed her Employer advising him of his lateness several times before she actually quit. Moreover, in furtherance of preserving her employment, Claimant graciously gave Employer several opportunities to become current in her wage payments before actually leaving her job. While we are mindful that Employer apparently had cash flow problems and did allow Claimant a flexible work schedule, these factors do not cause repeatedly late wage payments to constitute

any less of a compelling and necessitous reason to terminate employment. Accordingly, we hold that the UCBR erred as a matter of law in concluding that Claimant voluntarily quit her job without a necessitous and compelling reason for so doing.

Given the foregoing, we need not address Claimant's remaining issues. For all of the above reasons, the order of the UCBR is reversed.

Judge SIMPSON did not participate in the decision in this case.

Judge McCULLOUGH concurs in the result only.

*ORDER*

AND NOW, this 21st day of April, 2011, the August 23, 2010 order of the Unemployment Compensation Board of Review is reversed. The matter is remanded for determination as to the amount of unemployment compensation benefits due Amy Shupp.

Jurisdiction relinquished.