IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cambria County Transit Authority    :
("CAMTRAN"),    :
            Petitioner    :
    :   No. 454 C.D. 2018
            v.    :
    :   Submitted: December 13, 2018
Unemployment Compensation    :
Board of Review,    :
            Respondent    :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge

OPINION BY
JUDGE McCULLOUGH                FILED:  January 8, 2019

Cambria County Transit Authority (Employer) petitions for review of the March 13, 2018 order of the Unemployment Compensation Board of Review (Board) reversing a referee's decision that found Eileen Zibura (Claimant) ineligible for unemployment compensation (UC) benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[1]

**Facts and Procedural History**

Claimant was employed by Employer as a full-time bus driver from April 1989, until December 20, 2016.  (Board Finding of Fact (F.F.) No. 1.)  Claimant was

---

[1] Section 402(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).  Section 402(e) provides that "an employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act."  43 P.S. §802(e).

aware that Employer has a policy prohibiting the possession of any weapon while on Employer's property. (Board F.F. No. 2.) Employer's weapons policy defines a weapon as any instrument not used for its intended purpose or an implement of a crime that could result in serious bodily injury or that endangers the safety of employees or the public. (Board F.F. No. 3; Reproduced Record (R.R.) at 108a.) A violation of Employer's weapons policy results in discharge for the first offense. (Board F.F. No. 4; R.R. at 108a.) Further, Employer has a policy that "[a]ny conduct that is unlawful or violates the safety or policies of [Employer] may warrant discipline up to and including discharge." (Board F.F. No. 5; R.R. at 108a.)

On December 9, 2016, Employer's human resources (HR) assistant, Jen Gojmerac, visited Employer's transit center to change literature on a bulletin board regarding Employer's panel of workers' compensation physicians. (Board F.F. No. 6; R.R. at 47a.) Claimant came into the employee lounge where HR assistant Gojmerac was working. Gojmerac alleged that after entering the room, Claimant picked up a knife, asked Gojmerac if she wanted to play a game, and made a motion as if Claimant were going to toss the knife at her. (Board F.F. No. 8; R.R. at 48a.) Based on Gojmerac's allegation, Employer terminated Claimant on December 20, 2016, for violating its weapons policy. (Board F.F. No. 10; R.R. at 2a.)

Claimant applied for UC benefits and, on January 30, 2017, the local service center found Claimant eligible for benefits because it determined Claimant had not violated a work rule and, therefore, Employer had not met its burden of demonstrating that Claimant was discharged for willful misconduct under section 402(e) of the Law. (R.R. at 6a.) Employer appealed and a hearing was held before a referee on April 4, 2017.

At the hearing, five witnesses testified on Employer's behalf and two witnesses testified on Claimant's behalf. (R.R. at 27a.) The only eyewitnesses to the alleged incident involving the knife who testified at the hearing were Employer's HR

2

assistant, Gojmerac; Claimant; and Michael Walters, who was also present in the room at the time of the alleged incident. (R.R. at 43a, 49a, 58a, 61a, 68a, 76a, 83a).

HR assistant Gojmerac testified that on December 9, 2016, she visited Employer's transit center in order to post updated information regarding Employer's workers' compensation carriers. (R.R. at 48a.) Gojmerac entered the employee lounge where Walters and another employee were sitting at a table and couch, respectively. *Id.* According to Gojmerac, while she was standing at the bulletin board switching the workers' compensation postings, Claimant entered the room, asked Gojmerac what she was doing in the lounge, and told her to get out. (R.R. at 49a.) After Gojmerac told Claimant that she was there to switch the workers' compensation information, Claimant said that if she were to get injured she would go to Torrance Hospital, a mental hospital. *Id.* As Gojmerac continued her work with her back turned away from Claimant, Claimant asked her if she wanted to play a game. *Id.* Gojmerac explained that she then turned around and Claimant was holding a knife. *Id.* Gojmerac asked Claimant to put the knife down. *Id.*

Gojmerac testified that Claimant motioned like she was going to throw the knife at her, so Gojmerac again asked Claimant to put the knife down. (R.R. at 49a-50a.) Gojmerac stated she was concerned for her safety because the employee lounge is very small and Claimant was standing only three feet away from her when holding the knife. (R.R. at 50a.) Although Employer's other witnesses did not observe the alleged incident, Employer's HR manager, Tabatha McCormick, stated that Gojmerac was very upset and sobbing after exiting the transit center. (R.R. at 60a.) Employer's Director of Safety, Security and Risk Management, Donald Gibson, who met with Gojmerac later in the day on December 9, 2016, testified that Gojmerac was upset and shaking during their meeting. (R.R. at 68a.)

In contrast, Claimant testified that when Gojmerac was in the employee lounge they were having "a casual, jovial conversation." (R.R. at 76a.) She explained that she never threatened Gojmerac, did not point the knife toward her, and did not say

3

she would harm or hurt her. *Id.* Claimant admitted that at one point she "picked up the knife, looked at it, and put it right back down," but stated that the knife had been in the employee lounge for several years, that she was not the one who brought it into the lounge, and that other employees had used it for preparing food. *Id.* While Claimant testified that she picked up the knife and put it right back down, she stated that she did not use it to cut or prepare any food. (R.R. at 79a-80a.) Claimant stated that she might have asked Gojmerac why she was there in a nonchalant manner, but that she was not holding the knife when asking the question and never threatened her. (R.R. at 80a-82a.) Claimant also testified that she was taken aback by the whole situation and had never threatened anyone who worked for Employer. (R.R. at 77a.)

Walters, who works as a bus driver for Employer, testified that he was also in the employee lounge during the alleged incident. (R.R. at 82a.) He said that he did not see Claimant threaten anyone and did not see her point a knife at Gojmerac. (R.R. at 83a.) He stated that the knife in question had been in the lounge for many years. *Id.* He also testified that he never saw Claimant threaten anyone and would not be testifying on Claimant's behalf if he had seen her threaten Gojmerac. (R.R. at 84a.)

The referee issued a decision and order denying benefits. The referee found that after Gojmerac entered the lounge to change the workers' compensation information, Claimant appeared and asked Gojmerac why she was in the lounge. (Referee F.F. Nos. 7-9.) The referee noted that after Gojmerac advised Claimant she was there to update the workers' compensation information, Claimant said she would seek medical treatment at Torrance Hospital. (Referee F.F. No. 10.) The referee determined that Claimant "proceeded to pick up a knife and point it in the direction of [Gojmerac], while [Claimant] inquired whether [Gojmerac] desired to play a game." (Referee F.F. No. 11.) The referee further found that Gojmerac "requested [that Claimant] place the knife down, and [Claimant] responded by motioning she was throwing the knife at" Gojmerac. (Referee F.F. No. 12.) Additionally, the referee determined that Gojmerac abruptly finished her work, left the lounge, and was

4

sufficiently rattled by Claimant pointing the knife toward her and "making a motion of an intent to throw the knife." (Referee F.F. Nos. 13-14.)

The referee concluded that Employer had established a policy prohibiting its employees from possessing a weapon on its premises, that the policy defined a weapon as an instrument that is not being used for its intended purpose, and that Claimant was aware of the policy. (Referee decision at 3.) The referee decided to "resolve conflicting testimony favorable to [Employer's] HR assistant over the [C]laimant's recollection." *Id.* Specifically, the referee credited the testimony that Claimant picked up a knife; pointed the knife at Gojmerac, while asking if Gojmerac wanted to play a game; motioned as if she were going to throw the knife; asked Gojmerac why she was in the lounge; and told her to leave. *Id.* Accordingly, the referee concluded that Employer had met its burden of demonstrating Claimant was discharged for willful misconduct, and denied benefits pursuant to section 402(e) of the Law.

Claimant appealed the referee's decision to the Board.[2] In its findings of fact, the Board noted that HR assistant Gojmerac "alleged that when [Claimant] was in the room, she picked up a knife, asked if [Gojmerac] wanted to play a game, and made a motion like [Claimant] was going to toss the knife at her." (Board F.F. No. 8.) However, the Board found that,

> [Claimant] did pick up a knife and then put it down, but did not ask [Gojmerac] if she wanted to play a game, did not make a motion as if to throw the knife at [Gojmerac], and did not threaten [Gojmerac] in any way.

(Board F.F. No. 9.)

---

[2] On appeal to the Board, Claimant argued that the referee erred in not permitting the introduction of evidence at the hearing, which allegedly demonstrated that Claimant was actually terminated in retaliation for her union activities, rather than the incident in question. The Board ordered a remand hearing solely to permit Claimant's representative to ask questions concerning the allegedly pretextual nature of the termination and for Employer to offer testimony and evidence in rebuttal. Following the remand hearing, the Board issued its decision and order.

The Board acknowledged that "[t]he parties presented conflicting versions of the events that transpired on December 9, 2016." (Board decision at 3.) It noted that although HR assistant Gojmerac testified that Claimant picked up the knife, asked if she wanted to play a game, and made a motion like she was going to throw the knife at Gojmerac, Claimant "denied that she did anything more than pick up the knife and put it down." *Id.* The Board concluded that Claimant's "**testimony is corroborated by her witness, who testified that he was in the room at the time and did not see [Claimant] threaten [Gojmerac] in any way**." *Id.* (emphasis added). Thus, the Board "**credit[ed] the testimony of [Claimant] and her witness over the testimony of [Gojmerac]**." *Id.* (emphasis added). Because "Claimant did not threaten to use the knife in an inappropriate way," the Board concluded that Employer had failed to prove Claimant violated Employer's weapons policy. *Id.* Accordingly, the Board determined that Claimant was eligible for benefits under section 402(e) of the Law. *Id.*

## Discussion

Employer now petitions this Court for review of the Board's order,[3] arguing that the Board's determinations were not supported by substantial evidence and Employer satisfied its burden of demonstrating that Claimant was discharged for willful misconduct.

### A. Whether the Board's Factual Findings Were Supported by Substantial Evidence

Employer argues that the Board impermissibly disregarded the referee's findings. Employer contends that Claimant knew of Employer's policy prohibiting

---

[3] Our review of the Board's decision "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

weapons on its premises and that she clearly held a knife to HR assistant Gojmerac. Employer argues it is uncontroverted that Claimant held a knife, and that the Board may not disregard findings of the referee that are based upon consistent and uncontradicted testimony. Employer maintains that, unlike the Board, the referee could observe witnesses and make credibility determinations. In short, Employer argues there is substantial evidence in the record that Claimant threatened Gojmerac with a knife and that the Board erred in disturbing the referee's factual findings and credibility determinations.

In contrast, Claimant argues that there is substantial evidence in the record to support the Board's findings. Claimant correctly notes that the only finding contested by Employer is Finding of Fact 9, in which the Board found that Claimant "did pick up a knife and then put it down, but did not ask [Gojmerac] if she wanted to play a game, did not make a motion to throw the knife at [Gojmerac], and did not threaten [Gojmerac] in any way." (F.F. No. 9.) Claimant contends that this finding is supported by the testimony of Claimant and Claimant's witness. Since this testimony is supported by substantial evidence, Claimant asserts it is binding on appeal. Claimant also maintains that questions of credibility are decided by the Board, rather than the referee, and may not be disturbed on appeal. Claimant notes that where evidence is conflicting, the Board is free to credit whichever party it wants, even if different than the referee.

In UC cases, the Board's findings of fact must be supported by "[s]ubstantial evidence [which] is defined as 'such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.'" *Western & Southern Life Insurance Co. v. Unemployment Compensation Board of Review*, 913 A.2d 331, 335 (Pa. Cmwlth. 2006) (quoting *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999)). "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *Western & Southern Life Insurance Co.*,

913 A.2d at 335. This Court is bound "to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony" to determine if substantial evidence exists for the Board's findings. *United States Banknote Co. v. Unemployment Compensation Board of Review*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990). Moreover, "even if there is contrary evidence of record, the Board's findings of fact are binding upon the Court where supported by substantial evidence." *Borough of Coaldale v. Unemployment Compensation Board of Review*, 745 A.2d 728, 731 (Pa. Cmwlth. 2000).

Further, in UC cases, "it is well-settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight." *Serrano v. Unemployment Compensation Board of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016) (citing *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1388 (Pa. Cmwlth. 1985)). "The Board is also empowered to resolve conflicts in the evidence." *Id.* "'Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review.'" *Id.* (quoting *Peak*, 501 A.2d at 1388). "The Board is the arbiter of credibility and is free to accept or reject the testimony of any witness in whole or in part." *Ackley v. Unemployment Compensation Board of Review*, 166 A.3d 565, 568 (Pa. Cmwlth. 2017).

Moreover, "[t]his Court's review of a decision by the Board does not permit it to reweigh the evidence or substitute its own findings for those made by the Board." *Chartiers Community Mental Health and Retardation Center v. Unemployment Compensation Board of Review*, 134 A.3d 1165, 1172-73 (Pa. Cmwlth. 2016). However, "although the weight to be given the evidence and the credibility to be afforded the witnesses are within the province of the Board as finder of fact such a body is not free to ignore the overwhelming evidence in favor of a contrary result not supported by the evidence." *First Federal Savings Bank v. Unemployment*

*Compensation Board of Review*, 957 A.2d 811, 815 (Pa. Cmwlth. 2008) (internal quotation marks omitted).

Employer argues that it was improper for the Board to disregard the referee's factual and credibility determinations. However, Employer misconstrues our well-established precedent regarding who is the ultimate fact-finder in UC matters. In *Hercules v. Unemployment Compensation Board of Review*, 604 A.2d 1159, 1163 (Pa. Cmwlth. 1992), which Employer relies on in support of its argument that the Board could not disturb the referee's factual findings, we held that "[w]here there exists **overwhelming, uncontroverted evidence** upon which the referee relies to make findings, and where the Board takes no additional evidence, the Board may not disregard (or make findings contrary to) such findings of the referee unless it provides reasons for doing so . . . , or those reasons are clear from the record." *Id.* (emphasis added) (citing *Treon v. Unemployment Compensation Board of Review*, 453 A.2d 960 (Pa. Cmwlth. 1982)). However, in *Sprague v. Unemployment Compensation Board of Review*, 647 A.2d 675 (Pa. Cmwlth. 1994), we noted that the *Hercules-Treon* holding does not apply to cases "where **both sides presented evidence.**" *Id.* at 679 (emphasis added) (citing *Carter v. Unemployment Compensation Board of Review*, 629 A.2d 212 (Pa. Cmwlth. 1993)). Here, because both Employer and Claimant presented conflicting testimony regarding the alleged knife incident, the evidence was contested and, therefore, the Board was not bound by any of the referee's factual or credibility findings.

When viewing the evidence in the light most favorable to Claimant, as we must because the Board ruled in Claimant's favor, there is substantial evidence for the Board's findings that Claimant did not ask HR assistant Gojmerac if she wanted to play a game, did not motion as if she were going to throw the knife, and did not threaten Gojmerac. While Gojmerac testified that Claimant threatened her with a knife, this was contradicted by the testimony of Claimant and Walters. Specifically, Claimant testified that she never threatened Gojmerac, did not point the knife toward her, and

9

did not say she would harm or hurt her. (R.R. at 76a.) Claimant's testimony was corroborated by Walters, who testified that he did not see Claimant threaten or point a knife at Gojmerac. (R.R. at 83a.) Accordingly, based on the testimony of Claimant and Walters, there is substantial evidence in the record to support the Board's finding that Claimant did not threaten Gojmerac with a knife.

Further, the Board, as arbiter of credibility, was empowered to credit the testimony of Claimant and Walters over that of Gojmerac. Indeed, the Board made the following credibility determinations:

> The parties presented conflicting versions of the events that transpired on December 9, 2016. The [HR] assistant testified that [Claimant] picked up a knife, asked her if she wanted to play a game, and made a motion like [Claimant] was going to toss the knife at the [HR] assistant. [Claimant] denied that she did anything more than pick up the knife and put it down. [Claimant]'s testimony is corroborated by her witness, who testified that he was in the room at the time and did not see [Claimant] threaten the [HR] assistant in any way. The [Board] credits the testimony of [Claimant] and her witness over the testimony of the [HR] assistant. Therefore, because [Claimant] did not use or threaten to use the knife in an inappropriate way, the employer has failed to prove that [Claimant] violated its weapons policy and [Claimant] is eligible for benefits under Section 402(e) of the Law.

(Board decision at 3.) In its decision, the Board clearly noted the Parties' conflicting versions of the events that took place on December 9, 2016, but reasoned that Claimant's "testimony [was] corroborated by her witness, who testified that he was in the room at the time and did not see [Claimant] threaten [Gojmerac] in any way." (Board decision at 3.) Thus, the Board decided to credit the testimony of Claimant and her witness over the testimony of Gojmerac. *Id.* It appears that the Board credited Claimant's version of the events because an additional eyewitness corroborated her version, whereas Employer only presented the eyewitness account of one witness, *i.e.*,

10

that of Gojmerac. The Board was free to accept and reject the testimony of the witnesses in whole or in part and, on appeal, we may not disturb such determinations.

## B. Whether Employer Met Its Burden of Demonstrating that Claimant Was Discharged for Willful Misconduct

Employer next asserts that it met its burden of demonstrating willful misconduct. Relying on this Court's precedent, Employer contends that any form of physical threat and/or assault with or without weapons constitutes willful misconduct. Employer cites to *Mariano v. Unemployment Compensation Board of Review*, 432 A.2d 650 (Pa. Cmwlth. 1981), *Bender v. Unemployment Compensation Board of Review*, 427 A.2d 1264 (Pa. Cmwlth. 1981), *Florence v. Unemployment Compensation Board of Review*, 413 A.2d 784 (Pa. Cmwlth. 1980), and *Sorge v. Unemployment Compensation Board of Review*, 370 A.2d 818 (Pa. Cmwlth. 1977), in support of its argument that Claimant's threatening actions with the knife amounted to willful misconduct. It argues that there is nothing in the record to suggest that Claimant had "a good reason to be holding the knife or playing a game with a knife or otherwise holding it up to" Gojmerac. (Employer's Brief at 5.) Employer notes that Claimant admitted she was not cutting any food and had no legitimate reason to hold the knife. Based on our precedent, Employer contends that because Claimant held and brandished a knife she is ineligible for benefits.

Claimant argues that the mere fact that she picked up the knife in the employee lounge does not amount to a weapons policy violation and, therefore, her actions did not constitute willful misconduct. Because Employer's HR manager testified that holding a knife, in the absence of a threat, does not amount to a violation of the weapons policy, Claimant asserts that Employer did not meet its burden of demonstrating willful misconduct. Claimant also distinguishes the cases relied upon by Employer by arguing that those cases involved instances where the claimant committed assault or "brandished" a weapon, whereas here, Claimant merely picked

11

up and immediately put back down a knife that had been in the employee lounge for several years.

Section 402(e) of the Law provides that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for *willful* misconduct connected with his work." 43 P.S. §802(e) (emphasis added). While the Law does not define "willful misconduct," this Court has defined it as:

> (1) a wanton or willful disregard for an employer's interests; (2) a *deliberate* violation of an employer's rules; (3) a disregard for standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 1 A.3d 965, 968 (Pa. Cmwlth. 2010) (emphasis added). When the discharge is based on a rule violation, the employer must prove the existence of the rule and the rule's violation. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). The employer must also establish that the claimant was aware of the work rule. *Bruce v. Unemployment Compensation Board of Review*, 2 A.3d 667, 671 (Pa. Cmwlth. 2010). The claimant's actions must be intentional and deliberate. *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 426 (Pa. 2003). If the employer satisfies its burden, the burden shifts to the claimant to show that he or she had good cause for the conduct. *McKeesport Hospital v. Unemployment Compensation Board of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993).

The cases relied on by Employer in support of its argument that Claimant was fired for willful misconduct are inapposite in light of the Board's factual finding

12

that Claimant did not threaten or point a knife at HR assistant Gojmerac. In *Mariano*, the Board found that the claimant had assaulted a co-worker. 432 A.2d at 651. We concluded that the Board, as fact-finder, could choose to believe the witnesses who testified that the claimant physically attacked a co-worker and that such conduct constituted willful misconduct. *Id.* Similarly, in *Florence*, the "[e]mployer discharged claimant for threatening co-workers **with bodily harm while brandishing a knife in front of them**." 413 A.2d at 785 (emphasis added). Two eyewitnesses testified that they saw the claimant threaten to harm co-workers with a knife. *Id.* Although the claimant denied threatening his co-workers, the conflicting testimony was resolved in favor of the employer. *Id.* On appeal we concluded there was sufficient evidence to support a finding of willful misconduct. *Id.*

In *Bender*, the claimant, a custodian at a community college, was discharged for allegedly assaulting a female student. 427 A.2d at 1265. The referee and Board both found that the claimant physically assaulted the student. *Id.* On appeal, we concluded that the assault constituted willful misconduct. *Id.* Finally, in *Sorge*, the claimant was discharged after an altercation with his supervisor. 370 A.2d at 819. It was undisputed that the claimant had grabbed his supervisor by the throat with his hands. *Id.* The claimant argued his actions were justified because he was provoked. The Board did not credit the claimant's testimony that his supervisor struck him first, but found that the supervisor made critical remarks to the claimant. *Id.* On appeal, we concluded that the Board, as ultimate fact-finder, was empowered to resolve conflicts in the evidence and that there was no reason to disturb its findings on appeal. *Id.* We concluded that regardless of whether the supervisor used abusive language, the claimant's assault was not justified and that, therefore, the employer had met its burden of demonstrating willful misconduct. *Id.*

Unlike in those cases where the Board determined that the claimants had committed assault and/or threatened co-workers while brandishing a knife, here, the

13

Board did not find that Claimant threatened HR assistant Gojmerac or motioned as if she were going to throw a knife at her.[4] Rather, the Board only found that Claimant picked up a knife and put it back down. Thus, the cases relied upon by Employer are of limited value in deciding this appeal. Instead, we must determine whether the act of picking up the knife, in and of itself, constituted a violation of Employer's weapons policy.

Employer's weapons policy states as follows:

> **Possession Of Any Weapon While On Authority Property**: A "weapon" is defined as any instrument that is not used for its intended purpose or an implement of crime that could result in serious bodily injury or endangers the safety of employees or the public.

(R.R. at 108a; Board F.F. No. 3.)

Claimant testified that she "picked up the knife, looked at it[,] and put it right back down." (R.R. at 76a.) Both Claimant and Walters testified that the knife in question had been in the employee lounge for several years. (R.R. at 76a, 83a.) Employer's Executive Director testified that the knife in question could have been used to cut sandwiches or prepare food, (R.R. at 43a-44a), and Walters testified that the knife had been used to cut cake over the years, (R.R. at 58a). Claimant admitted that when she picked up the knife she was not preparing or cutting food and, in fact, had no interaction with any food. (R.R. at 79a-80a.) However, Employer's HR manager admitted that, **in the absence of a threat, possession of a metal knife in the employee's lounge was not a violation of Employer's policies**. (R.R. at 66a.)

Based on these facts, because Claimant merely picked up the knife, put it back down, and did not threaten her co-worker, we conclude she did not violate

---

[4] The dictionary definition of "brandish" is to "shake or wave (a weapon) menacingly" or "to exhibit or expose in an ostentatious, shameless, or aggressive manner." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 268 (1986). Here, because the Board only found that Claimant picked up a knife, her actions do not amount to "brandishing," as defined in the dictionary.

Employer's weapons policy. Therefore, the Board did not err in concluding that Claimant's conduct did not constitute willful misconduct.

## Conclusion

Because there is substantial evidence to support the Board's determination that Claimant did not violate Employer's weapons policy, the Board's order is affirmed.

_____

PATRICIA A. McCULLOUGH, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cambria County Transit Authority :
("CAMTRAN"), :
             Petitioner :
             : No. 454 C.D. 2018
           v. :
             :
Unemployment Compensation :
Board of Review, :
            Respondent :

## *<u>ORDER</u>*

AND NOW, this 8th day of January, 2019, the March 13, 2018 order of the Unemployment Compensation Board of Review is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge