# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Liberty Vet Pets, LLC,              :
               Petitioner       :
                              :   No. 1707 C.D. 2024
         v.                :
                              :   Submitted: March 3, 2026
Unemployment Compensation    :
Board of Review,             :
               Respondent    :

BEFORE:   HONORABLE LORI A. DUMAS, Judge
              HONORABLE MATTHEW S. WOLF, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

## _OPINION NOT REPORTED_

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                              **FILED: April 9, 2026**

Liberty Vet Pets, LLC (Employer) has petitioned this Court to review an adjudication of the Unemployment Compensation Board of Review (Board). Having determined that Andrea Heller (Claimant) established a necessitous and compelling reason for her voluntary resignation, the Board awarded Claimant unemployment compensation (UC) benefits under Section 802(b) of the UC Law.[1] After careful review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, _as amended_, 43 P.S. § 802(b). The UC Law's section numbers are distinct from "the sections provided in Purdon's Pennsylvania Statutes, which is an unofficial codification of Pennsylvania law." _Herold v. Univ. of Pittsburgh_, 329 A.3d 1159, 1116 n.1 (Pa. 2025). For clarity, we may refer to provisions of the UC Law "only by their Purdon's citation." _Id._

# I. BACKGROUND[2]

Claimant was employed as an office manager for Employer for about 7 months and received weekly paychecks. Throughout her employment, Claimant experienced discrepancies in her pay, such that she was regularly underpaid for her work. On July 18, 2023, Claimant advised Employer that she was owed pay accumulating to $500. That same day, Employer presented Claimant with a new employment agreement that removed the option for her to receive benefits but kept her duties and pay the same. On July 19, 2023, Claimant called out of work due to illness. Claimant was not scheduled for work July 20 or 21, 2023. Her next scheduled shift was on July 24, 2023.

On July 21, 2023, Claimant met Employer in the parking lot of the office location to pick up her weekly paycheck, at which time she informed Employer that she would not return to work until she was paid the outstanding income owed to her. Claimant did not report to work for her scheduled shift on July 24, 2023, and did not return to work thereafter.

On July 27, 2023, Employer sent a letter to Claimant that terminated her employment and enclosed a final paycheck. Claimant filed for UC benefits with the UC Service Center, which found that Claimant was eligible for benefits under Section 802(e) of the UC Law.[3] *See* Qualifying Separation Determination, 12/4/23. Employer appealed to the UC Referee, who conversely found Claimant ineligible for UC benefits under Section 802(e) of the UC Law. *See* Appeals Referee Dec.,

---

[2] Unless otherwise stated, we adopt this background from the Board's Decision and Order, which is supported by substantial evidence of record. *See* Bd.'s Dec. & Order, 10/17/24.

[3] 43 P.S. § 802(e) provides that "[a]n employee shall be ineligible for compensation for any week [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act."

1/12/24. Claimant did not appear at the hearing before the Referee, despite receiving notice. *See id.* As a result, the Referee concluded that Employer's undisputed testimony demonstrated that since Claimant was absent for several days and did not respond to Employer's attempts to reach out to her, this conduct constituted willful misconduct and rendered Claimant ineligible for benefits. *See id.*

Claimant timely appealed to the Board, which remanded to the Referee to take testimony regarding Claimant's nonappearance and the merits of her appeal. *See* Bd.'s Remand Order, 5/7/24. Additionally, the Board directed the Referee to notify the parties that the Board may decide the appeal under either Section 802(b)[4] or 802(e) of the UC Law. *See id.*

On remand, Claimant testified that she was not able to attend the first hearing because she had traveled late in the evening hours of the night before the hearing from Pennsylvania to Florida to care for her mother who had sustained a head injury and was in the hospital. Claimant stated that she notified the UC Service Center of her status in the early morning of the day of the hearing but did not contact the Referee's office because she only had the UC Service Center's contact information, not the Referee's. The Board credited this testimony, finding that Claimant had good cause for her nonappearance.

On the merits of Claimant's appeal, she testified that she was terminated by Employer after she had notified Employer that she would not return until she received all the payment owed to her. Claimant further testified that the final paycheck she received from Employer was for "four hours owed to me from

---

[4] Section 402(b) states that "[a]n employee is ineligible for compensation for any week [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b).

the beginning of July which is the reason that I discontinued working for them because I was not . . . paid." *See* Tr. of Testimony (T.T.), 6/10/24, at 11.

The Board found that Claimant voluntarily terminated her employment with Employer, but that she did so for necessitous and compelling reasons. Specifically, Claimant resigned only after raising her concerns regarding underpayment with Employer, and the issue became contentious when the underpaid wages owed to her reached $500 and remained outstanding. As a result, the Board found that Claimant was eligible for benefits under Section 802(b) of the UC Law.

Employer timely appealed to this Court.

## II. ISSUE

Employer essentially raises one issue for our review. Employer asserts that the Board erred in determining that Claimant had met her burden of proving a necessitous and compelling reason to quit employment under Section 802(b) of the UC Law. *See* Employer's Br. at 9, 17.

## III. DISCUSSION[5]

Employer argues that the Board erred in determining that Claimant had a necessitous and compelling reason to quit her employment. *See* Employer's Br. at 17. According to Employer, certain testimony from Claimant was inconsistent and should not have been credited.[6] *See id.* at 17, 21-23. Employer contends that

---

[5] On appeal, our review is limited to "determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 135 n.4 (Pa. Cmwlth. 2022).

[6] Employer asserts that the Board gave no explanation as to why it found differently than the Referee. *See* Employer's Br. at 21-23. For example, Employer highlights that although the Referee found that Claimant called off work on July 19, 2023, and was scheduled to work on July 20 and 21 but did not show up, the Board found that Claimant called off work July 19, 2023, but was not scheduled to work on July 20 and 21. *See id.* at 21. We point out that Claimant was not

4

Claimant did not make a reasonable effort to preserve her employment, and this failure renders her ineligible for benefits. *See id.* at 18-20. Additionally, Employer asserts that an employer's failure to include the correct pay in a paycheck does not automatically provide an employee with a necessitous and compelling reason to leave employment. *See id.* at 19-20 (citing *Koman v. Unemployment Comp. Bd. of Rev.*, 435 A.3d 277 (Pa. Cmwlth. 1981)).

The Board responds, asserting that Claimant had a necessitous and compelling reason to leave her employment and its determination is supported by the record. *See* Claimant's Br. at 6. Throughout her time working for Employer, Claimant continuously encountered discrepancies in her pay and raised the issue with Employer several times. *See id.* at 6-14. Then, the Board explains, when the outstanding income owed to Claimant reached $500, she again raised the issue with Employer, who, instead of resolving the issue, presented her with a new employment agreement that removed the option to receive benefits. *See id.* The Board argues that it was only then that Claimant notified Employer that she would not return to work until she was paid the income owed to her. *See id.* (arguing that Claimant's case is distinguishable from *Koman* because the pay discrepancies were not an isolated incident, citing *Warwick v. Unemployment Comp. Bd. of Rev.*, 700 A.2d 594 (Pa. Cmwlth. 1997) and *Shupp v. Unemployment Comp. Bd. of Rev.*, 18 A.3d 462 (Pa. Cmwlth. 2011)).

Generally, a claimant shall be ineligible for benefits for a period "[i]n which [her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . . ." 43 P.S. § 802(b). An employee seeking unemployment compensation after voluntarily terminating employment has the

present at the Referee's hearing and, therefore, could not present contrary evidence for the Referee to evaluate.

5

burden of proving cause of a necessitous and compelling nature. *Fitzgerald v. Unemployment Comp. Bd. of Rev.*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998).

To establish a necessitous and compelling reason for leaving employment, an employee must prove that: "(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment." *Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Rev.*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006) (*Brunswick*). An employee's mere dissatisfaction with working conditions does not, by itself, amount to a necessitous and compelling reason to resign. *Id.* at 661. Similarly, "[p]ersonality conflicts, absent an intolerable work atmosphere, do not amount to a necessitous and compelling cause for leaving one's employment." *Wert v. Unemployment Comp. Bd. of Rev.*, 41 A.3d 937, 940 (Pa. Cmwlth. 2012) (citation omitted). On the other hand, several instances of late wage payments, coupled with the employee's protest and the employer's refusal to ensure timely payment as requested by the employee, may constitute necessitous and compelling cause for the employee's termination of employment. *See Warwick v. Unemployment Comp. Bd. of Rev.*, 700 A.2d 594, 597 (Pa. Cmwlth. 1997). The question of whether an employee had a necessitous and compelling reason to voluntarily leave employment is a question of law fully reviewable by this Court. *Id.*; *Steinberg Vision Assoc. v. Unemployment Comp. Bd. of Rev.*, 624 A.2d 237 (Pa. Cmwlth. 1993).

When there is substantial evidence to support the Board's findings, they are conclusive on appeal, even if there is contrary evidence of record. *Cambria Cnty. Transit Auth. ("CamTran") v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947

(Pa. Cmwlth. 2019). As the ultimate fact finder, the Board has the authority to determine the weight of the evidence and assess witness credibility, and it is free to accept or reject any testimony, in whole or in part. *Id.* The resolution of credibility questions and evidentiary conflicts falls within the Board's discretion and such determinations "are not subject to re-evaluation on judicial review." *Id.* (internal citation omitted).

On appeal, we must examine the testimony in the light most favorable to the prevailing party, affording that party the benefit of all logical and reasonable inferences. *Id.* Whether the record contains evidence supporting findings other than those made by the Board is irrelevant; "the critical inquiry is whether there is evidence to support the findings actually made." *Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018).

Employer relies on *Koman* to argue that Claimant failed to meet her burden of proving a necessitous and compelling reason for quitting her employment. In *Koman*, the claimant experienced only two delayed wage payments, one after employer's office was closed on vacation, and the other caused by a clerical error that reduced the claimant's wages. *See Koman*, 435 A.3d at 279. The claimant in *Koman* did not raise these pay issues with her employer. *See id.* at 279-280. Because she failed to show that the payment issues were ongoing, or that she sought assurance of timely payment or otherwise made reasonable efforts to preserve the employment relationship, this Court held that she lacked a necessitous and compelling cause to resign. *See id.*

By contrast, the Board relies on *Warwick* and *Shupp*. In *Warwick*, the claimant was underpaid for eight weeks. *See Warwick*, 700 A.2d at 595. He complained after four weeks and was told the issue had been corrected, but the

7

payroll errors continued. *See id.* at 595-97. Although the employer sometimes issued supplemental checks to cover the shortages, the claimant was at other times forced to wait for corrections from the payroll center. *See id.* After the errors persisted, the claimant refused further assignments until the issue was resolved. *See id.* This Court concluded that the employer's ongoing failure to ensure correct payment on regular paydays constituted a necessitous and compelling cause for the claimant to terminate his employment. *See id.*

Likewise, in *Shupp*, the employer repeatedly failed to pay the claimant on time, and the claimant had repeatedly complained about those late payments. *See Shupp*, 18 A.3d at 465. On the final occasion, the claimant emailed the employer to advise that it was four weeks behind in paying her wages. *See id.* The employer responded only with a partial payment and dismissed her concerns. *See id.* The Court explained that repeated late wage payments create substantial pressure on an employee to leave, and held that, because the claimant repeatedly attempted to address the problem before resigning, she had established a necessitous and compelling cause. *See id.*

Viewing the testimony in the light most favorable to Claimant as the prevailing party, *see Sipps*, 181 A.3d at 484, we conclude that substantial evidence supports the Board's finding that Claimant established a necessitous and compelling reason for her voluntary resignation. *See Pierce-Boyce*, 289 A.2d at 136.

This case is more analogous to *Warwick* and *Shupp* than *Koman*. Claimant's testimony established that the pay discrepancies were not isolated incidents, but rather, repeated throughout her employment. She testified that these underpayments occurred "[e]very week." *See* T.T., 6/10/24 at 20. Claimant further testified that the underpayments were a "regular occurrence," explaining that

8

typically[,] what happened was on Monday[,] [Employer] would correct the issue and write me a supplemental paycheck[;] however[,] as the money started to accumulate into a higher amount[,] [Employer] . . . wasn't paying me appropriately. So[,] when the amount got over $500[,] I started to be concerned and things escalated and . . . [Employer] took my benefits package away and tried to make me sign a new contract. I requested the money I was owed. That was on July 18, and then I ultimately did not get the money I was owed until I was fired at the same time.

*Id.* at 13.

Unlike the claimant in *Koman*, Claimant was frequently underpaid in her weekly paychecks and raised the issue with Employer on multiple occasions, and, when the amount owed reached $500, informed Employer that she would not return to work until she was paid in full. *See* T.T., 6/10/24, at 12-13. Instead of correcting the issue, Employer presented Claimant with a new employment agreement that eliminated her benefits package. *See id.* at 13. As in *Warwick* and *Shupp*, Employer's repeated failure to ensure that Claimant was properly paid constitutes a necessitous and compelling cause for Claimant to terminate her employment. *See Brunswick*, 906 A.2d at 660. Claimant has met her burden under the UC Law. *See* 43 P.S. § 802(b).

Employer additionally argues that the Board erred by failing to explain why it found differently than the Referee. *See* Employer's Br. at 21-23. This argument lacks merit. Claimant did not appear at the Referee's hearing and, therefore, could not present contrary evidence for the Referee to evaluate. As a result, the Referee's findings were necessarily based solely on Employer's evidence. When Claimant later testified at the remand hearing, the Board was free to consider that testimony, resolve conflicts in the evidence, and make its own credibility determinations. *See CamTran*, 201 A.3d at 947. The existence of conflicting

9

testimony, or even contrary evidence in the record, does not establish that the Board abused its discretion or committed an error of law. *See id.* Our role is not to reweigh the evidence, but only to determine whether the Board's findings are supported by substantial evidence. *See Pierce-Boyce*, 289 A.3d at 135 n.4; *CamTran*, 201 A.3d at 947.

Here, the Board resolved all conflicting testimony in favor of Claimant. *See* Bd.'s Dec. This determination is supported by substantial evidence. Claimant testified that Employer had a history of underpaying her, that she informed Employer she would not return unless she was paid the wages owed, that rather than remedy the underpayments, Employer offered her a new agreement eliminating benefits, and that Employer had been repeatedly made aware of the ongoing pay issues. *See* T.T., 6/10/24 at 11-13.

Moreover, Employer's own testimony was inconsistent. Employer initially testified that Claimant called off work on July 19, 2023, failed to report to work on July 20 and 21, and stated while picking up her paycheck on July 21, that she would not be returning. *See* T.T., 1/11/24, at 7. At the remand hearing, however, Employer testified that Claimant never said she would not return and instead asserted that Claimant failed to respond to calls or text messages asking whether she intended to return to work. *See* T.T., 6/10/24, at 22. Thus, according to Employer, Claimant was terminated for job abandonment. Claimant denied receiving any such calls or text messages from Employer. *See* T.T., 6/10/24, 22-23.

Employer also points to evidence it believes undermines Claimant's account, including a list of Claimant's hours for the week of July 3 through July 7, 2023, which Employer says shows Claimant was not scheduled to work on July 20 and 21. *See* Employer's Br. at 22. Employer further contends that Claimant

10

contradicted herself regarding whether she worked full-time while receiving overtime pay. *See id.* at 22-23. These arguments, however, appear to ask this Court to reweigh the evidence and draw inferences contrary to those adopted by the Board, which is beyond our review. *See Pierce-Boyce*, 289 A.3d at 135 n.4; *CamTran*, 201 A.3d at 947.

## IV. CONCLUSION

The Board properly considered the totality of the evidence, made reasoned credibility determinations, and issued findings supported by substantial evidence. *CamTran*, 201 A.3d at 947. Additionally, substantial evidence exists to support the Board's conclusion that Claimant established a necessitous and compelling cause for voluntarily terminating her employment. *See Pierce-Boyce*, 289 A.2d at 135; *Brunswick*, 906 A.2d at 660; *Warwick*, 700 A.2d at 595-97. Thus, Claimant is eligible for UC benefits. *See* 43 P.S. § 802(b).

Accordingly, we affirm.


**LORI A. DUMAS, Judge**

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Liberty Vet Pets, LLC, : 
          Petitioner : 
           : No. 1707 C.D. 2024
        v. : 
           : 
Unemployment Compensation : 
Board of Review, : 
          Respondent : 

## **O R D E R**

AND NOW, this 9th day of April, 2026, the order of the Unemployment Compensation Board of Review, entered October 17, 2024, is AFFIRMED.

 

**LORI A. DUMAS, Judge**