# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

RSR Electric, LLC,                   :
                Petitioner          :
                                    :
                                    :   No. 14 C.D. 2025
         v.                   :
                                    :   Submitted: April 13, 2026
Unemployment Compensation             :
Board of Review,                      :
                Respondent          :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STELLA M. TSAI, Judge


***OPINION NOT REPORTED***

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                              **FILED:  June 1, 2026**

RSR Electric, LLC (Employer) has petitioned this Court to review the adjudication of the Unemployment Compensation Board of Review (Board), issued December 18, 2024, which granted Camryn Souchet (Claimant) unemployment compensation (UC) benefits. The Board concluded that Claimant was eligible because Claimant had not intended to quit pursuant to Section 802(b) of the UC Law[1] and did not commit willful misconduct pursuant to Section 802(e) of the UC

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). The UC Law's section numbers are distinct from "the sections provided in Purdon's Pennsylvania Statutes, which is an unofficial codification of Pennsylvania law." *Herold v. Univ. of Pittsburgh*, 329 A.3d 1159, 1166 n.1 (Pa. 2025). For clarity, we may refer to provisions of the UC Law "only by their Purdon's citation." *Id.* Section 802(b) provides that "[a]n employee is ineligible for compensation for any week [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b).

Law.[2]  After careful consideration, we find that substantial evidence supports the Board's conclusions.  Accordingly, we affirm.

## I. BACKGROUND[3]

Claimant was employed full-time by Employer as an "electrical apprentice" for about 7 months.  Employer is just one division in a larger company with several other divisions, including "Nitro Cutting."  Before Claimant's employment with Employer, Claimant was employed by the Nitro Cutting division for almost 2 years.  Claimant requested a transfer to Employer from Nitro Cutting, which was accommodated.

Claimant's job description summary for his "electrical apprentice" position provided that he was "responsible for seeking out and learning new skills associated with the electrical field.  Their progression to becoming a journeyman electrician hinges on their ability and desire to learn electrical skills.  It is suggested that these associates attend a formal apprenticeship program."  *See* Tr. of Test. (T.T.), 10/8/24, Emp.'s Ex. at 5.  The qualifications and competencies of the position provided that, "[t]o perform this job successfully, an individual must progress in their learnings based upon the guidelines below.  Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions." *Id.*  The description then delineates the specific skills and competencies expected of electrical apprentices at each of the four progressive years of the position.  *See* T.T., Emp.'s Ex. at 5-6.  The job description does not identify any specific deadlines for

---

[2] Section 802(e) of the UC Law provides that an employee is ineligible for compensation for any week that his unemployment is the result of his discharge from work due to willful misconduct. 43 P.S. § 802(e).

[3] Unless otherwise stated, we adopt the factual background for this case from the Board's decision, which adopted the Referee's decision, and which is supported by substantial evidence of record.  *See* Bd.'s Dec., 12/18/24; Ref.'s Dec., 10/9/24.

the position's expectations or requirements beyond this four-year progression of skills. *See* T.T., Emp.'s Ex. at 5-7. Furthermore, the job description is also devoid of any reprimand or punishment for not completing the "suggested" formal apprenticeship program. *See id.*

In early August 2024, after Employer reached out to Claimant about enrolling in the formal apprenticeship program, Claimant notified Employer that he did not intend to enroll. On August 13, 2024, Claimant texted his supervisor, "Hey [S]kip I made up my mind about electrical[,] and I don't think [I']m [going to] take it further[. W]ill I be able to go back into [Nitro Cutting] if that's a possibility?" The next day, Claimant was terminated from his position. *See* T.T., Emp.'s Ex. at 12-14.

Thereafter, Claimant filed for UC benefits, which the Department of Labor and Industry denied pursuant to Section 802(e) of the UC Law, reasoning that Claimant's refusal to complete his training constituted performance that was below the standards expected for the position. *See* Disqualification Separation Determination, 8/26/24.

Claimant appealed to the Referee, who conversely found Claimant eligible for benefits. At Employer's request, the Referee considered Claimant's eligibility under both Section 802(b) and Section 802(e). Nevertheless, following a hearing, the Referee issued findings that Employer had terminated Claimant's employment, but that Claimant's actions did not rise to willful misconduct. Employer appealed to the Board, which adopted the Referee's findings and affirmed.

Employer now timely appeals to this Court.

3

## II. ISSUES

Employer raises three issues. First, Employer asserts that the Board erred in applying Section 802(e) regarding willful misconduct, instead of Section 802(b), which concerns voluntary resignation. *See* Emp.'s Br. at 19, 21-23. Second, Employer contends that substantial evidence does not support the Board's finding that Employer failed to prove willful misconduct. *See id.* at 19, 23-26. Third, Employer asserts that the Board capriciously disregarded evidence such that it failed to issue a reasoned decision and even adopted inconsistent findings of fact from the Referee. *See id.* at 19, 26-28.

## III. DISCUSSION[4]

Employer's issues all raise evidentiary challenges to the Board's decision, contending that it lacks substantial evidentiary support and that the Board failed to render a reasoned decision or capriciously disregarded evidence. *See generally* Emp.'s Br.

Substantial evidence is relevant evidence that a reasonable person may accept as adequate to support a conclusion. *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 136 (Pa. Cmwlth. 2022). When there is substantial evidence to support the Board's findings, they are conclusive on appeal, even if there is contrary evidence of record. *Cambria Cnty. Transit Auth. (CamTran) v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019). As the ultimate fact finder, the Board has the authority to determine the weight of the evidence and assess witness credibility, and it is free to accept or reject any

---

[4] On appeal, our review is limited to "determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 135 n.4 (Pa. Cmwlth. 2022).

4

testimony, in whole or in part. *Id.* The resolution of credibility questions and evidentiary conflicts falls within the Board's discretion, and such determinations "are not subject to re-evaluation on judicial review." *Id.* (internal citation omitted).

Additionally, a capricious disregard of evidence "occurs where the fact finder willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result." *Wise v. Unemployment Comp. Bd. of Rev.*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015). A capricious disregard also refuses to "resolve conflicts in the evidence" or make "essential credibility determinations," or it may "completely ignore[] overwhelming evidence without comment." *Id.* at 1263.

On appeal, we must examine the testimony in the light most favorable to the prevailing party, affording that party the benefit of all logical and reasonable inferences. *See Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018). Whether the record contains evidence supporting findings other than those made by the Board is irrelevant; "the critical inquiry is whether there is evidence to support the findings actually made." *Id.*

## A. Application of Section 802(e)

Employer asserts that the Board erred in applying Section 802(e), instead of Section 802(b), because the evidence clearly demonstrates that Claimant voluntarily resigned from his position; so, the Board either disregarded evidence indicating that Claimant quit or abused its discretion in concluding otherwise. *See* Emp.'s Br. at 19, 21-23, 27-28. According to Employer, Claimant refused to acquire the necessary education and skills for his position and communicated that he did not wish to continue in the electrical field. *See id.* Employer primarily relies on the text

5

message Claimant sent to his supervisor as purportedly dispositive evidence of a voluntary resignation. *See* Emp.'s Br. at 21-23.

The Board responds, contending that it properly reviewed the matter under Section 802(e) of the UC Law because Claimant's separation from Employer was involuntary. *See* Bd.'s Br. at 6, 8-10. The Board explains that Claimant credibly testified that he intended to continue employment with Employer and that the text message only inquired about transferring to another division and did not provide any specific resignation date. *See id.* Thus, the Board argues, Employer's termination the day following the text message is an indication that the separation was involuntary. *See id.* at 10.

Viewing the testimony in the light most favorable to Claimant as the prevailing party, *see Sipps*, 181 A.3d at 484, we find that substantial evidence supports the determination that Claimant did not voluntarily resign, but was instead discharged by Employer. Although the text message reflects Claimant's reservations about continuing in the electrical field, and that Claimant inquired about the possibility of transferring to another department, the text message is not dispositive of a voluntary quit, particularly in light of the fact that Employer terminated Claimant the following day. *See* T.T. at 6-7, 12-14.

Further, Claimant credibly testified that he did not intend to resign, and Employer failed to present a witness with first-hand knowledge of the separation. *See* T.T. at 6-7, 12-13; T.T., Emp.'s Ex. at 12-14. Mere expressions of hesitation or dissatisfaction do not, without more, establish a voluntary quit, especially where, as here, there is no subsequent conduct to support such a conclusion, and the employment relationship was promptly terminated by the employer. *See, e.g., York Tape & Label Corp. v. Unemployment Comp. Bd. of Rev.*, 435 A.2d 305, 309 (Pa.

6

Cmwlth. 1981) (finding that an employee's statement that she was seeking other employment, without providing a resignation date or expressing an intent to leave, did not constitute a voluntary quit).

Finally, Employer itself suggested that it would "stipulate for the record that the parties . . . decided that [Claimant] no longer had a job with the Employer and discharged him." T.T. at 7. Clearly, the Board did not capriciously disregard any evidence, but rather properly weighed the evidence and reached a supported determination. *See CamTran*, 201 A.3d at 947; *Wise*, 111 A.3d at 1262-63.

Thus, viewing the testimony in the light most favorable to Claimant as the prevailing party, and recognizing that this Court may not disturb the Board's findings where substantial evidence supports them, notwithstanding the existence of contrary evidence, the Board did not err in concluding that Claimant was discharged by Employer and in applying Section 802(e) of the UC Law. *See Sipps*, 181 A.3d at 484; *CamTran*, 201 A.3d at 947.

### B. Willful Misconduct

Second, Employer asserts that the Board "disregarded what was a clear showing of willful misconduct on the part of Claimant." Emp.'s Br. at 19. Specifically, Employer contends that Claimant "willfully disregarded the standards of behavior which [] Employer expected him to complete when he refused to continue his education to reach the level of skill necessary for the position." *Id.* at 24.

On the other hand, the Board maintains that Employer has failed to prove that Claimant committed willful misconduct. *See* Bd.'s Br. at 6, 11-17. According to the Board, the job description for the electrical apprentice position "suggests" a formal apprenticeship program but does not require one, nor does it

specify a deadline for completing a formal apprenticeship program or any other requirements. *See id.* at 6-7.

Willful misconduct is defined as (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of behavioral standards an employer can rightfully expect from an employee; or (4) negligence demonstrating an intentional disregard of the employer's interests or the employee's duties. *Pierce-Boyce*, 289 A.3d at 135. This Court has long held that "whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Id.* (quoting *Brown v. Unemployment Comp. Bd. of Rev.*, 65 A.3d 76, 78-79 (Pa. Cmwlth. 2012)).

To establish willful misconduct, an employer must prove the existence of a work rule, the reasonableness of the rule, the claimant's knowledge of the rule, and the claimant's subsequent violation of the rule. *Id.* at 136; *see also Kelly v. Unemployment Comp. Bd. of Rev.*, (Pa. Cmwlth., No. 2437 C.D. 2009, filed July 8, 2010) 2010 WL 9519317 (repeated failure to attend mandatory training sessions constituted willful misconduct, especially where the employee had been warned and/or reprimanded for prior similar conduct).[5] "An employer need not have an established rule where the behavioral standard is obvious, and the employee's conduct is so inimical to the employer's best interests that discharge is a natural result." *Umedman v. Unemployment Comp. Bd. of Rev.*, 52 A.3d 558, 562 (Pa. Cmwlth. 2012) (cleaned up). Once the employer demonstrates willful misconduct, the burden shifts to the claimant to prove that he had good cause for his willful misconduct. *See Walsh v. Unemployment Comp. Bd. of Rev.*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008).

---

[5] We can cite as persuasive unpublished decisions of this Court filed after January 15, 2008. *See* Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a).

Substantial evidence supports the Board's determination. Employer argues that the Board disregarded "a clear showing of willful misconduct" because Claimant allegedly refused to comply with Employer's standards by declining to complete a formal apprenticeship program. Emp.'s Br. at 19. However, Employer's own job description clearly states that attendance in a formal apprenticeship program is "*suggested*," not required. *See* T.T., Emp.'s Ex. at 5 (emphasis added). Although the job description outlines skills to be developed over a 4-year period and provides that employees are responsible for acquiring additional skills, it does not mandate participation in any particular training program. *See id.*

At the time of discharge, Claimant had been employed for approximately 7 months and remained within the first year of a 4-year progression. Employer acknowledged that, aside from the training issue, Claimant met the expectations of his position, had not been disciplined for performance deficiencies, and had not been placed on a performance improvement plan. *See* T.T. at 8-9. Employer further conceded that employees were not required to obtain training through the specific program that Claimant had declined. *See* T.T. at 11. Although Claimant did not indicate whether he intended to pursue alternative training, there is no evidence that Employer sought clarification on that point before terminating his employment the following day. Under these circumstances, Employer's assertion of willful misconduct was premature. Viewing the testimony in the light most favorable to Claimant as the prevailing party, *see Sipps*, 181 A.3d at 484, Claimant's conduct, expressing hesitation about the electrical field and declining to participate in a non-mandatory program, does not rise to the level of willful misconduct.

9

### C. Reasoned Decision/Capricious Disregard

Lastly, Employer asserts that the Board failed to issue a reasoned decision because the Board capriciously disregarded evidence and adopted inconsistent findings of fact from the Referee. *See* Emp.'s Br. at 26-28. Employer argues that the Referee's findings of fact in paragraphs 4 and 5,[6] which the Board adopted, contain conflicting information. *See id.* at 19-20, 28.

Conversely, the Board argues that it did not capriciously disregard evidence or adopt inconsistent findings of fact when it determined that Claimant intended to continue working in the electrical apprentice position because, although Claimant may have had reservations about pursuing a career in the electrical field, he testified that he did not intend to quit his position with Employer at the time of his separation. *See* Bd.'s Br. at 7, 17-20.

We find that the Referee's findings of fact in paragraphs 4 and 5 are not in conflict with each other. Finding of fact 4 establishes that Claimant communicated hesitation about continuing in the electrical field and inquired about a potential transfer, while finding of fact 5 reflects that Claimant nevertheless intended to continue working in his position and had not been subject to prior discipline. *See* Ref.'s Dec., 10/9/24. When read together, these findings demonstrate that although Claimant may have been exploring other options, he had not formed a definite intent to resign. *Cf. York Tape & Label Corp.*, 435 A.2d at 309. There is nothing in the record to suggest that the Board refused to either resolve

---

[6] Finding No. 4 provides, "[o]n August 13, 2024, the Claimant texted his supervisor, 'Hey skip I made up my mind about electrical and I don't think im gonna take it further will I be able to go back to nitro if that's a possibility?'" Ref.'s Dec., 10/9/24, at 2. Finding No. 5 provides, "[t]he Claimant intended to continue working in the electrical apprentice position and had no prior discipline." *Id.*

10

conflicts in the evidence, make essential credibility determinations, or completely ignore overwhelming evidence without comment. *See Wise*, 111 A.3d at 1262. Even though there is contrary evidence of record, substantial evidence supports the Board's findings here, and this Court does not reweigh the evidence or credibility determinations. *See CamTran*, 201 A.3d at 947.

## IV. CONCLUSION

The Board properly considered the totality of the evidence, made reasoned credibility determinations, and issued findings supported by substantial evidence. *CamTran*, 201 A.3d at 947; *Wise*, 111 A.3d at 1262-63. Additionally, substantial evidence exists to support the Board's conclusions that Employer terminated Claimant's employment and that Employer failed to meet its burden of proving that Claimant was discharged for willful misconduct. *See Pierce-Boyce*, 289 A.3d at 136. Thus, Claimant is eligible for UC benefits. *See* 43 P.S. § 802(e).

Accordingly, we affirm.

**LORI A. DUMAS, Judge**

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

RSR Electric, LLC,           :
         Petitioner      :
                         :   No. 14 C.D. 2025
         v.           :
                         :
Unemployment Compensation   :
Board of Review,           :
         Respondent    :

## **O R D E R**

AND NOW, this 1st day of June, 2026, the order of the Unemployment Compensation Board of Review, issued December 18, 2024, is AFFIRMED.

 

                               _____
                               **LORI A. DUMAS, Judge**

RSR Electric, LLC, : 
           Petitioner : 
            : 
       v. : 
            : 
Unemployment Compensation : 
Board of Review, :   No. 14 C.D. 2025
           Respondent :   Submitted: April 13, 2026

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STELLA M. TSAI, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COVEY                         FILED: June 1, 2026

Respectfully, because I disagree with the Majority's conclusion that the Unemployment Compensation (UC) Board of Review (UCBR) did not err in concluding that Camryn Souchet (Claimant) was eligible for UC benefits under Section 402(e) and/or 402(b) of the UC Law (Law),[1] I would reverse the UCBR's order.

The Referee's findings of fact, which the UCBR adopted and incorporated in their entirety, are as follows:

> 1. [] Claimant was last employed by RSR Electric[, LLC (Employer)] **as a full-time electrical apprentice** earning $23.95 per hour from January 8, 2024, through his last day of work on August 14, 2024.
>
> 2. [] Claimant's job description provided that [] **Claimant was expected to improve his electrical skills** and

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (relating to willful misconduct), (b) (relating to voluntarily leaving employment).

suggested that he attend an apprenticeship training program.

3. In early August 2024, [] **Claimant notified** [] **Employer** that **he did not intend to attend the apprenticeship program**.

4. On August 13, 2024, [] Claimant texted his supervisor, "Hey [S]kip **I made up my mind about electrical and I don't think [I'm] gonna** [sic] **take it further**[,] will I be able to go back to [N]itro [Cutting[2]] if that's a possibility?"

5. [] Claimant intended to continue working in the electrical apprentice position and had no prior discipline.

6. On August 14, 2024, [] **Employer notified** [] **Claimant that** [**Claimant**] **was being terminated because he did not want to continue in his electrical career and no positions were available at Nitro** [**Cutting**].

Referee Dec. at 2 (emphasis added). Significantly, Claimant expressly admitted that he believed Employer should have fired him after he said he was no longer interested in electrical work. Specifically, in response to the Referee inquiring: "Okay. So what was your intention with that message then if not to leave [Employer]?" Claimant testified: "Well, my intentions were -- I mean **obviously what** [**Employer**] **had to do was**, **yeah**, **fire me**." Certified Record (C.R.) at 112 (emphasis added).

> The law is well settled:
>
> Under Section 402(e) of the Law, an employee is not eligible for benefits if "his unemployment is due to his discharge . . . for willful misconduct connected with his work. . . ."
>
> > Willful misconduct has been defined as (1) the wanton and willful disregard of the employer's interest; (2) the deliberate violation of rules; (3) the disregard of standards of behavior which an employer can rightfully expect from his employee; or (4) negligence which manifests culpability,

---

[2] RSR Electric and Nitro Cutting are components of a larger company, Velocity Group. *See* Certified Record at 106.

> wrongful intent, evil design or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.
>
> *Elser v. Unemployment Comp. Bd. of Rev*[.], 967 A.2d 1064, 1069 n.7 (Pa. Cmwlth. 2009). "Whether a claimant's conduct constituted willful misconduct is a question of law subject to this Court's review. . . ." *Roberts v. Unemployment Comp. Bd. of Rev*[.], 977 A.2d 12, 16 (Pa. Cmwlth. 2009) . . . .

*Umedman v. Unemployment Comp. Bd. of Rev.*, 52 A.3d 558, 561 (Pa. Cmwlth. 2012).

Here, Claimant worked for Nitro Cutting from March 7, 2022 to January 8, 2024. Claimant transferred to Employer on January 8, 2024, to work as a full-time electrical apprentice. On August 7, 2024, Employer inquired whether Claimant was going to participate in Associated Builders and Contractors' (ABC) apprentice schooling program to further his electrical career. Claimant stated that he did not think the ABC program was something he wanted to do. *See* C.R. at 109; *see also* C.R. at 127. Thereafter, he discussed his plans with Employer's Human Resources Department. *See id*. Ultimately, on August 13, 2024, Claimant texted his supervisor: "**I made up my mind** about electrical and I don't think I'm going to take it further." C.R. at 109, 129 (emphasis added).

An electrical apprentice who is no longer willing to do electrical work "disregard[s] [the] standards of behavior which an employer can rightfully expect from his employee." *Umedman*, 52 A.3d at 561 (quoting *Elser*, 967 A.2d at 1069 n.7). A claimant who is hired as a full-time electrical apprentice, who is no longer interested or willing to continue working in the electrical field, takes the position away from someone who is willing to be an electrical apprentice. Clearly, such action is against an employer's interest. Here, Claimant, a full-time electrical apprentice, told Employer that he was no longer interested in working in the

electrical field or willing to proceed in the apprentice program, thereby taking the position away from someone who is willing and interested in an electrical apprentice position. As such, Claimant disregarded the standard of behavior that Employer expected from him. Accordingly, Employer has met its burden of proving Claimant committed willful misconduct.

Further, this Court has long held:

Section 402(b) [of the Law] provides that a claimant shall be ineligible for benefits for a period "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b). A claimant who voluntarily terminates his employment has the burden of proving that a necessitous and compelling cause existed. *Petrill v. Unemployment Comp[.] [Bd.] of Rev[.]*, 883 A.2d 714, 716 (Pa. Cmwlth. 2005). It is now well-settled that an employee who claims to have left employment for a necessitous and compelling reason must prove that:

(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve h[is] employment.

*Brunswick Hotel & Conf[.] C[tr.], LLC v. Unemployment Comp[.] [Bd.] of Rev[.]*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006) (citing *Fitzgerald v. Unemployment Comp[.] [Bd.] of Rev[.]*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998)).

*Solar Innovations, Inc. v. Unemployment Comp. Bd. of Rev.*, 38 A.3d 1051, 1056 (Pa. Cmwlth. 2012).

Here, after Claimant informed Employer that he was no longer interested in electrical work and that he wanted to return to his former position with Nitro Cutting, it was entirely reasonable for Employer to interpret Claimant's statements as a resignation. Because no longer being interested in electrical work is

not a necessitous and compelling reason to leave employment, Employer met its burden under Section 402(b) of the Law to show that Claimant is not eligible for UC benefits.

Moreover, the Referee's findings of fact, which the UCBR adopted, support reversing the UCBR's conclusion that Claimant was eligible for UC benefits. Accordingly, because Claimant is not eligible for UC benefits under either Section 402(e) and/or (b) of the Law, I would reverse the UCBR's order.

_____
ANNE E. COVEY, Judge